400 A.2d 1281

COMMONWEALTH of Pennsylvania, Appellee,

v.

Gerald NICHOLS, a/k/a Gerald Nicholas, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 16, 1979.

Decided May 1, 1979.

2

A. Jay Molluso, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., James Garrett, Asst. Dist. Attys., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On April 9, 1974, Gerald Nichols, appellant, was convicted by a jury of murder of the second degree, burglary, aggravated robbery, and other related offenses.[1] After a denial of Nichols' motions for a new trial and in arrest of judgment, judgments of sentence totalling twenty to forty years imprisonment were imposed.

No appeals were then entered. However, in 1976, post-conviction relief proceedings were instituted, and, after finding Nichols had not effectively waived his right to appeal from the judgments of sentence, the court entered an order permitting these appeals nunc pro tunc.[2]

Nichols seeks a new trial and, in part, complains the trial testimony of a Commonwealth police witness as to Nichols' obstreperous conduct during a police lineup conducted in connection with a totally unrelated crime indicated to the jury he had been engaged in other criminal activity and thus prejudiced his right to a fair verdict of his guilt or innocence of the charges on trial.[3]

1. The prosecution stemmed from the robbery of a retail market owned and operated by Ernest Vassalo in Philadelphia on March 22, 1972, during which a customer in the market was fatally assaulted by the felon.

2. The appeal from the judgment imposed on the murder conviction was filed in this Court. An appeal from judgments of sentence imposed on the remaining convictions was filed in the Superior Court which certified that appeal to this Court.

3. Nichols also argues, inter alia, that an inference of prior criminal activity arose during trial through the introduction into evidence of a "mug shot," (showing a frontal and profile view of Nichols with all writing cropped away) taken of Nichols five days before the lineup and from a reference by a Commonwealth witness to photographs in police possession. Because of our decision, we need not discuss this issue.

4

 "In Pennsylvania, the law is clear that if a testimonial reference[, absent specific circumstances,] . . . indicates to the jury the accused has been involved in prior criminal activity, reversible error has been committed." *Commonwealth v. Turner*, 454 Pa. 439, 442, 311 A.2d 899, 900 (1973). This is not to say, however, that all references which may indicate prior criminal activity warrant reversal. For example, under certain circumstances, a defendant's testimony may be impeached by showing prior convictions of felonies in the nature of crimen falsi, *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), and references to *related* criminal activity are allowable under certain circumstances.[4] Further, "passing references" to prior criminal activity do not necessarily warrant reversal. See e. g., *Commonwealth v. Irwin*, 475 Pa. 616, 381 A.2d 444 (1977); *Commonwealth v. McFadden*, 464 Pa. 265, 346 A.2d 550 (1975); *Commonwealth v. Sharpe*, 449 Pa. 35, 296 A.2d 519 (1972). Rather, the record must illustrate that prejudice results from the reference. Prejudice results where the testimony conveys to the jury, either expressly *or by reasonable implication,* the fact of a prior criminal offense. *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520 (1978); *Commonwealth v. Banks*, 454 Pa. 401, 311 A.2d 576 (1973).

The record discloses these relevant facts:

 The crimes here involved occurred on *March 23, 1972.* The lineup referred to was conducted on *March 30, 1972.* According to a Commonwealth police trial witness, Nichols refused to cooperate, was forcibly placed in the lineup "with other inmates" by "prison guards," threw himself on the floor during the lineup, and attempted to conceal his face.[5]

4. Instantly, we are not dealing with related crimes (see p. 1283, infra). Concerning the circumstances where references to related criminal activity are allowable, see *Commonwealth v. Rose*, 483 Pa. 382, 396 A.2d 1221 (1979); *Commonwealth v. Fortune,* 464 Pa. 367, 346 A.2d 783 (1975).

5. Following this testimony, a motion for a mistrial was denied.

The Commonwealth admits that this lineup was conducted in connection with a totally unrelated crime and that, at the time of the lineup, Nichols was not yet charged with or in custody for the crimes here involved.[6] However, pointing out these particular facts were not elicited at trial, the Commonwealth argues this background was "completely unknown to the jury," and, hence, "the only reasonable inference available to the jury was that it [the lineup] resulted from" and was related to the crimes charged at trial and thus no prejudice resulted. It appears to us the Commonwealth underestimates the intelligence of a jury.

While the jury was not specifically informed the lineup concerned an unrelated crime, other testimony brought to the jury's attention that Nichols was the "prime suspect" in the lineup and that it was viewed by only one witness, a female,[7] to see if she could identify Nichols. Additionally, none of the Commonwealth trial witnesses in the case were of the female gender, and no indication exists in the record that a female witnessed these crimes. Further, evidence was presented to establish that the key Commonwealth witness, Ernest Vassallo, as late as the summer of 1972, was cooperating with authorities in an attempt to identify the felon through photographs. Given these facts, we cannot agree with the Commonwealth's position that "the only reasonable inference available to the jury was that it [the

6. Nichols was arrested in connection with the instant crimes on June 29, 1972.

7. While the lineup was conducted for "a woman" and this was brought out by defense counsel on cross-examination, we must still consider it because it was essential for the defense to bring this fact to the jury's attention.

 We cannot hold the defense "responsible" for the introduction of this evidence, under the circumstances of this case, since the defense was forced to show that any inference of guilt from the conduct at the lineup was not an inference of guilt for the crimes sub judice. That is, the Commonwealth having introduced the evidence, the defense was left with two options: either say nothing and allow the possibility of an improper inference being drawn or attempt to defeat the inference. The latter being, we feel, the *only* reasonable course of action, we will not hold the defense responsible for the introduction of this evidence.

lineup]" was conducted as to the crimes on trial. As we view it, the jury could, under the circumstances, reasonably infer prior unrelated criminal activity by Nichols.

Since the jury could reasonably have inferred Nichols was involved in other unrelated crimes from the evidence relating the March 30th lineup, prejudice resulted, and a new trial must be granted. *Commonwealth v. Riggins,* supra; *Commonwealth v. Banks,* supra.

Judgments of sentence reversed and a new trial is granted.

NIX, J., filed a concurring opinion.

NIX, Justice, concurring.

The most startling aspect of this case is that the Commonwealth's explanation in defense of the introduction of the testimony relating to appellant's conduct at a prior lineup would, if accepted, constitute even more grievous error than the one that the majority addresses.

The Commonwealth admits in its brief that the purpose sought to be achieved by the introduction of appellant's obstreperous conduct during the unrelated lineup was to prove that the appellant had engaged in a course of conduct designed to evade detection of guilt. The law is settled in Pennsylvania that evidence of flight, or of other means adopted by a defendant to avoid detection, with respect to the crime charged, is admissible evidence tending to prove the defendant's consciousness of guilt of that crime. *See, e. g., Commonwealth v. Holland,* 480 Pa. 202, 389 A.2d 1026 (1978) (altered appearance of defendant admissible); *Commonwealth v. Sanabria,* 478 Pa. 22, 385 A.2d 1292 (1978) (flight); *Commonwealth v. Faulcon,* 450 Pa. 414, 301 A.2d 375 (1973) (flight); *Commonwealth v. Osborne,* 433 Pa. 297, 249 A.2d 330 (1969) (flight); *Commonwealth v. Coyle,* 415 Pa. 379, 203 A.2d 782 (1964) (flight). While the conduct of the appellant during the earlier lineup may well have supported an inference of guilt of the crime for which the lineup was then being conducted, it was totally irrelevant as

to his complicity in the instant incident. Since none of the persons involved in the present offense were present at the lineup in question, it is absurd to suggest that his conduct at the proceeding reflected a consciousness of guilt for the instant crime.

However, the fact that this evidence was clearly irrelevant in the instant case is not the only evil caused by its admission. Even more serious, if we accept the Commonwealth's analysis, the jury was lead to believe that this lineup was part of the investigation in this case. Pursuing this reasoning a step further, his conduct at that lineup could properly be interpreted as a consciousness of guilt for this offense.

While, as the majority believes, the jury may have been perspicacious enough to have discerned this attempt to fool them, the Commonwealth astonishingly maintains the contrary.

"It is unprofessional conduct for a prosecutor knowingly to offer false evidence, whether by documents, tangible evidence, or the testimony of witnesses." ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function, § 5.6(a) (Prosecution Function) (Approved Draft 1970) at 119. While this evidence was not "false evidence" in the sense in which perjured testimony would be considered false evidence, this testimony was introduced for the same purpose for which perjured testimony would be proffered, to wit, to mislead the jury and to create a false impression that the evidence of appellant's conduct at the lineup was relevant to the issue of his guilt of the crime as charged in this case. Thus, if the prosecutor was of the belief that this testimony was accepted by the jury as being related to this trial, it was their obligation to correct that misapprehension. Certainly they cannot be permitted to rely upon this misinterpretation. We are bound by the rule established by the United States Supreme Court in *Napue v. Illinois*, 360 U.S. 364, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) which states that a conviction obtained through the knowing use of materially false testimony may not stand and a prosecuting attorney has an

8

affirmative duty to correct testimony which he knows to be false. *See also Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Commonwealth v. Carpenter,* 472 Pa. 510, 372 A.2d 806 (1977); *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (1977); *Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217 (1976); *Commonwealth v. Moehring,* 445 Pa. 400, 285 A.2d 487 (1971); *Commonwealth v. Alston,* 430 Pa. 471, 243 A.2d 404 (1968).

I, therefore, agree that a new trial must be awarded.