580 A.2d 840

**COMMONWEALTH of Pennsylvania**

**v.**

**Karen PHILLIPS a/k/a Karenanne Phillips, Appellant.**

Superior Court of Pennsylvania.

Argued June 5, 1990.

Filed Sept. 26, 1990.

60

Charles J. Cunningham III, Philadelphia, for appellant.

Deborah Fleisher, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, TAMILIA and CERCONE, JJ.

CERCONE, Judge:

This is a direct appeal from a judgment of sentence entered after a jury found appellant, Karen Phillips, guilty of murder in the first degree,[1] and possession of an instrument of crime.[2] We affirm.

In an opinion filed January 22, 1990, the learned Judge Joseph D. O'Keefe has aptly and comprehensively summarized the facts underlying the instant case. We will not repeat those gruesome details here. After the jury found appellant guilty, post-trial motions were timely filed but were denied by the lower court. Appellant was subsequently sentenced to serve a term of life imprisonment for murder with a concurrent term of two and one-half (2½) to five (5) years incarceration for possession of an instrument of crime. This timely appeal ensued in which appellant raises a total of sixteen issues and sub-issues:[3]

1. 18 Pa.C.S.A. § 2502.

2. *Id.* § 907.

3. In her "Statement of Questions Involved," appellant's brief sets forth only the first three of the sixteen issues and sub-issues later developed in the "Argument" section of her brief. This is a clear violation of Pa.R.A.P., Rule 2116, 42 Pa.C.S.A. Appellant's brief also lacks legible page numbers and appears to be missing material from the "Argument" section. Although our review of the issues raised on appeal has been hampered by the defects in appellant's brief, we are not precluded from reaching the merits of appellant's claims as the lower court has addressed each contention properly preserved by post-trial motion. In consideration of this fact, and because this is an appeal from a conviction for first degree murder, we decline to find waiver in this instance. *See* Pa.R.A.P., Rule 105, 42 Pa.C.S.A. However, we direct

I. Whether the prosecutor's improper summation so prejudiced the jury that a new trial should be granted in that he,

a) testified to facts not of record

b) vilified appellant and her defense

c) played to the jurors' sympathies

d) expressed his own opinions as to credibility and guilt?

II. Whether appellant was denied a fair trial by Det. Patricia Brennan testifying that appellant told her that appellant had a "prior criminal record" but that "she would not say for what"?

III. Whether appellant was denied a fair trial by the prosecutor's questions to several witnesses eliciting testimony that appellant,

a) had received psychiatric treatment in the past

b) had a drug habit

c) had thrown temper tantrums in the past

d) had demonstrated violent behavior in the past and,

e) how she supported herself?

IV. The court improperly denied appellant's challenge for cause against prospective juror Charles McMonigle who,

a) was a retired Philadelphia police detective;

the attention of counsel for appellant to *Commonwealth v. Sirbaugh,* 347 Pa.Super. 154, 160–61, 500 A.2d 453, 456 (1985) disapproving the practice of filing briefs which contravene the Rules of Appellate procedure and quoting the following remarks made by Aldisert, J. in *United States v. Hart,* 693 F.2d 286, 287 n. 1 (3d Cir.1982):

With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to *any* of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

(Emphasis in the original.) *See also Commonwealth v. Klinger,* 323 Pa.Super. 181, 470 A.2d 540 (1983) (disapproving failure to comply with the Rules of Appellate Procedure).

64

b) knew the assistant district attorney trying the case;

c) knew some of the detectives who were testifying;

d) was a current, active member of the Fraternal Order of Police.

V. The court improperly instructed the jury on the definition of malice by telling them that it was the same as the intent to kill.

VI. That appellant was denied a fair trial by the prosecutor eliciting testimony from one of the interrogating detectives that, in his opinion, appellant's statement to police was an untruthful account of what took place and that he had additional evidence not testified to, that appellant's intent was to rob the deceased [sic] drug money.

We shall address these claims *seriatim.*

The first contention raised is that the prosecutor's improper summation so prejudiced the jury that a new trial is required. Appellant argues that during summation, the prosecutor effectively testified to facts not of record, vilified her, "played to the juror's sympathies" in an unwarranted manner, and expressed his own opinions as to appellant's credibility and guilt. We note initially that every inappropriate remark made by a prosecutor does not necessitate a new trial. *Commonwealth v. Maxwell*, 505 Pa. 152, 166, 477 A.2d 1309, 1317 (1984), *cert. denied.*, 469 U.S. 971, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984), *reh'g denied*, 472 U.S. 1033, 105 S.Ct. 3516, 87 L.Ed.2d 644 (1985). The lower court is required to grant a new trial only when the prosecutor's remarks inevitably prejudice the jury to such a degree that they are prevented from weighing the evidence and rendering a true verdict. *Id.* "[C]omments by a District Attorney do not constitute reversible error unless 'the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.' " *Commonwealth v. Marshall*, 523 Pa. 556, 570, 568 A.2d 590, 597 (1989), *quoting Commonwealth v. Pursell*, 508 Pa. 212, 495

A.2d 183 (1985). When reviewing prosecutorial remarks, the statements must be evaluated in the context in which they occurred. *Commonwealth v. Maxwell, supra; Commonwealth v. Smith*, 490 Pa. 380, 416 A.2d 986 (1980). Mindful of this standard of review, we will consider the specific claims which appellant preserved in her post verdict motions. These are as follows:

A new trial should be awarded because the Court improperly overruled defense objections to the District Attorney's closing argument, wherein the District Attorney,

a) invented facts not of record with regard to the victim's physical condition, saying that she may not have walked as fast and may not have been as lucid as she once was;

b) described to the jury how the tire iron precisely fit the sketch drawn by Sergeant Snyder, although no evidence had been introduced that the sketch was drawn to the exact measurements of the victim;

c) argued to the jury that the defense did not have the facts, the law, or right on their side, as demonstrated by the cliché told to him by an old law professor;

d) attempted to arouse the sympathy of the jury by going outside the record and talking about his own grandmothers, so as to compare them to the victim in this case, who was the grandmother of [appellant];

e) invented facts not of record testifying for the victim, "what are you doing with that," (indicating the tire iron), "don't hit me with that";

f) repeated the detectives' opinion and then gave his own opinion as well that [appellant's] statement to the police was not believable;

g) argued to the jury that [appellant] had thrown away the Bill of Rights when she committed this crime; and

h) had kept up a running theme throughout his speech about fear from crime and violence in the city streets and concluded his argument to the jury that if they came back with less than first degree murder he would

have to find another place to live, implying that the streets of Philadelphia would not be safe.

*See* Appellant's post-verdict motions, filed 4/20/89.

We have carefully inspected the certified record in the instant case and find no indication that the prosecutor invented facts not of record. In the context of describing the personal characteristics of Lucy Martin, the murder victim, the prosecutor made the following comments:

We talk about the least members of society and then we talk about quote, for it is written, whomever do this to the least of thine breathren they do unto me [sic]. Who are the least of these? Maybe they are the Lucy Martins of the world, the five foot three inch, seventy-one year old ladies who may not have walked as fast as she used to walk, she may not have been as lucid as she once was. She was suffering from some form of arterial schlerosis [sic], she got her monthly check, and she was deathly afraid of, if you believe the neighbors to be alone at night and she didn't let anybody in.

N.T. 4/12/89 at 75. The statements by the prosecutor regarding the victim's physical condition are fully supported by the testimony of the medical examiner, Dr. Robert L. Catherman. N.T. 4/11/89 at 22. As the learned trial judge correctly ruled, "These statements were confined to the evidence and the legitimate inferences drawn therefrom." Trial court opinion at 18.

The record also belies appellant's claim regarding the prosecutor's description of the effect that contact with a tire iron had on the victim's skull. The record indicates that the Commonwealth introduced sketches of the victim at trial rather than actual photographs because of the gruesome nature of the victim's injuries.[4] *See, e.g., Commonwealth v. Crawley,* 514 Pa. 539, 526 A.2d 334 (1987) (sketches which were neutral and noninflammatory were properly admitted as a visual aid to assist the jury in understanding the nature of the wounds inflicted on the

---

**4.** The victim's skull had been crushed and bludgeoned to the extent that her brain was exposed to view.

victims). In commenting on defense counsel's summation and the nature of the wounds inflicted on the victim, the prosecutor stated:

[Defense counsel] stood up here and he told you that we didn't even show that this tire iron was used, and I found that to be incredible.

If you pay close attention to Sergeant Snyder's sketch and you look at the right jaw, right down to the sprocket end it fits, blood on the shaft and all.

N.T. 4/12/89 at 75–76. These statements are consistent with and reflect Dr. Catherman's testimony regarding the victim's physical condition as illustrated by the police sketches and photographs, and his medical opinion regarding the cause of her death. N.T. 4/11/89 at 10–19; 25. As the prosecutorial remarks are supported by the record, we find no error.

■ Appellant's claim of vilification rests upon the following statements made by the prosecutor:

[Defense counsel] is standing up asking questions and making his point, that's his job. But he reminds me of an old law school professor that I had at the University of California in Los Angeles, a wise old man. He had retired and he once said, if you have the facts on your side, son, you argue the facts. If you have the law on your side, you argue the law. When you have right on your side, you argue right. And when you have neither, you stand up and you raise questions.

N.T. 4/12/at 76. Appellant does not explain the precise manner in which the contested comments created such bias and hostility in the minds of the jury as to preclude their ability to hinder their objective view of the evidence. As there is no *per se* rule in this Commonwealth prohibiting the prosecution from referring to legal adages, saws or maxims, we are unable to grant appellant relief on this claim. *See Commonwealth v. Maxwell, supra.*[5]

**5.** The *Maxwell* court found no reversible error where the prosecutor told the jury:

68

■ Next, appellant claims that the district attorney improperly attempted to arouse the sympathy of the jury by going outside the record and talking about his own grandmothers, and by comparing them to appellant's grandmother, the victim in the instant case. The defense raised the theory that appellant was guilty only of voluntary manslaughter because the victim provoked the incident by hitting her granddaughter. The prosecutor responded to this theory by discussing the nature of the relationship that normally obtains between grandparent and grandchild and by inviting the jury to reflect whether the response to grandmotherly chastisement would reasonably include bludgeoning an elderly woman to death with a tire iron. N.T. 4/12/89 at 78–80. We find no reversible error stemming from the fact that the prosecutor illustrated a more traditional view of the relationship between grandparent and grandchild with memories of his own youth.

■ Appellant also complains that it was improper for the assistant district attorney to invent testimony on behalf of the victim. In the course of commenting on why the victim opened her door to her granddaughter, the prosecutor made the following statement:

Lucy Martin made a mistake that night and she died for it. She was dead wrong for letting [appellant] into her apartment, if you believe that. She was dead wrong to care for her enough to wonder what she was doing out that time of night, and maybe in her words, hey, what are you doing with that, don't hit me with this.

N.T. 4/12/89 at 82. We are unable to conclude that this brief speculation regarding the victim's possible reaction upon being accosted by her granddaughter, who was armed with a tire iron, rises to the level of "inventing testimony." Nor are we able to discern the manner in which the prosecu-

There is an old adage in the law if you got the facts on your side, you argue the facts, if you got the law on your side, you argue the law, if you have neither, you blow smoke. And that is what counsel did for two hours yesterday. By putting me on trial he was blowing smoke.
*Id.*

tor's fleeting remark could possibly have created such bias or hostility in the jury as to require the grant of a new trial.

■ The next claim of error raised by appellant is that the prosecutor improperly repeated an opinion expressed by a police detective and then gave his own opinion that appellant's response to the police officer was not believable. N.T. 4/12/89 at 83. The background to the prosecutor's comment transpired during the direct and cross-examinations of defense witness Detective John Szymczak. This witness had interviewed appellant shortly after her arrest and was aware of the extent of the victim's injuries. Detective Szymczak testified that appellant initially reported that a black man had broken into the victim's apartment and committed the crime; that he told the appellant that he did not believe her story; and that appellant eventually changed her explanation of how the victim died and admitted that she killed her grandmother. N.T. 4/11/89 at 106–08; 114–18. During summation, the prosecutor referred to the fact that although the police caught the accused "red-handed," literally covered with the victim's blood, she lied to the police regarding the identity of her grandmother's assailant. N.T. 4/12/89 at 83. After making that comment, the prosecutor immediately said, "You can believe all, some, or none of the statement." *Id.*

When viewed in context, it is evident that the assistant district attorney was not attempting to convince the jury that appellant was non-credible because of her demeanor or because she had a "bad character." The evidence properly before the jury showed that appellant's initial statement to the police was not entirely truthful. She first informed the police that an unknown black man killed her grandmother. She then admitted perpetrating the murder herself, but claimed that she hit her grandmother with her hands and not with a weapon. The record shows that the victim's head was beaten until her brain was exposed, that pieces of her scalp were scattered on her living room floor, and that blood and hair were found on a tire iron at the scene. Based on this evidence, the detective clearly had reason to

believe that appellant lied about hitting her grandmother only with her hands. The prosecutor's reference to the detective's conclusion that appellant lied in her statement was based on evidence properly before the jury, not on the prosecutor's personal opinion, and was instantly followed by a reminder that the jury was responsible for making up their own minds regarding the truth or falsity of a witness' statements. Under these circumstances, we find no error in the trial court's refusal to grant a new trial. *See Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974) (it was not reversible error for the prosecutor to employ the terms "lie" or "lying" when referring to inconsistencies and contradictions between the accused's testimony and prior statements made to the police).

The lower court has aptly and correctly addressed appellant's contentions regarding both the prosecutor's comment that she had thrown away the Bill of Rights and regarding a prosecutorial "theme" harping on crime and violence in the streets of Philadelphia. As appellant has conceded that "[m]uch of what the prosecutor argued to the jury was empty rhetoric," we are somewhat at a loss to understand why appellant believes the prosecutor's remarks entitle her to a new trial. *See* Appellant's brief at 8. Finding no indication in the record that the prosecutor's comments could have created the type of bias or hostility that would preclude the jury from performing its proper function, we affirm on the basis of the lower court opinion with regard to these two issues. *See* trial court opinion filed 1/22/90 at 19.

Appellant's second main argument is that she was denied a fair trial because Detective Patricia Brennan testified that appellant had told the officer she had a prior criminal record but refused to explain what this entailed. We agree with appellant that evidence of other crimes is not admissible against a defendant solely to show his bad character and his propensity for committing criminal acts. *Commonwealth v. Lark*, 518 Pa. 290, 302, 543 A.2d 491, 497 (1988). However, "[t]here is no *per se* rule that re-

quires a new trial for a defendant every time there is a reference to prior criminal activity." *Commonwealth v. Morris*, 513 Pa. 169, 176, 519 A.2d 374, 377 (1986). The reference to prior criminal activity "must be prejudicial to the defendant, with prejudice resulting 'where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense.' " *Id.*, *quoting Commonwealth v. Nichols*, 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979). Our supreme court has additionally determined that it is possible to eradicate any prejudice resulting from reference to prior criminal activity through an immediate curative instruction to the jury. *Id.* "[W]here the Commonwealth did not deliberately elicit the reference to a prior unrelated crime, did not exploit the reference, and introduced no evidence of the prior unrelated crime, a prompt curative instruction is sufficient to negate any prejudice which may have resulted." *Commonwealth v. Haag*, 522 Pa. 388, 401, 562 A.2d 289, 295 (1989).

The record shows that Detective Brennan, while describing the entire interview process conducted in appellant's case, testified that she queried appellant about routine biographical information. N.T. 4/11/89 at 52–56. The detective described appellant's answers to inquiries regarding the appellant's name, date of birth, place of birth, aliases or nicknames, height, weight, religion, marital status, current address, employment status, social security number, whether she had a driver's license, had served in the armed forces, or spoke a foreign language. *Id.* Detective Brennan then stated, "She told me that she does have a criminal record, but she did not state what it was for. And she stated she was not currently on probation or parole at that time." *Id.* at 56. The detective subsequently discussed appellant's responses to a further series of questions relating to the names and addresses of her closest friend, her parents, and her brothers and sisters. The witness also described the condition and characteristics of the clothing and jewelry worn by appellant at the time of this interview. *Id.* at 56–57. After the witness explained that appellant

was not wearing socks with her shoes at the time of her arrest, the prosecutor moved for the admission of an exhibit. At this point, defense counsel requested an interview in chambers. *Id.* at 57.

During the in-chambers discussion, which was of record, defense counsel moved for a mistrial. The prosecution, however, requested a curative instruction. While the lower court was resolving the better course to pursue, the jury was given a break. *Id.* at 60–61. Upon investigation, the trial judge ascertained that appellant had no prior criminal record as she had completed ARD subsequent to an arrest for disorderly conduct and the record had been expunged. *Id.* at 62–65. The lower court was satisfied that the prosecutor had not planned beforehand to present improper information to the jury or to allude to the fact that appellant had a prior arrest. As the Commonwealth made no effort to exploit this testimony in any way, the trial judge determined that it was appropriate to issue a curative instruction rather than to grant a new trial. *Id.* Immediately upon the resumption of the trial, the lower court judge instructed the jury as follows:

> Ladies and gentlemen, there was some testimony from Detective Brennan, she indicated that the defendant had a prior record. That is *incorrect.* The defendant has *no prior record.* Do you all understand that *she has no prior record,* and as every defendant she is presumed innocent from this point up until you begin to deliberate.

*Id.* at 68 (emphasis added).

Although appellant concedes that a prompt curative instruction obviates the necessity for a new trial, she argues that the instruction given in this case was inadequate. We disagree. The lower court could do no more than explain to the jury that the detective had made an incorrect statement and that the appellant had no criminal record whatsoever. In fact, the trial judge emphasized the importance of the latter fact by repeating it twice to the jury. Under these circumstances, we find no reversible error.

The third group of issues raised by appellant is that she was denied a fair trial because the prosecutor elicited testimony from several witnesses regarding: (a) psychiatric treatment received by appellant; (b) appellant's drug habits; (c) appellant's history of throwing "temper tantrums"; (d) previous demonstrations of appellant's violent behavior; and (e) the manner in which appellant supported herself. The admissibility of evidence is a matter addressed to the sound discretion of the trial court. *Commonwealth v. Tedford*, 523 Pa. 305, 328, 567 A.2d 610, 621 (1989). We may reverse evidentiary rulings only upon a showing that the trial court abused its discretion. *Id.*, 523 Pa. at 238–39, 567 A.2d at 621. We have carefully considered the parties' briefs regarding the prosecutor's questions and the resulting answers. After reviewing the witnesses' testimony in its proper context, we find that the trial court's rationale for admitting this evidence demonstrates that no abuse of discretion occurred. We therefore affirm on the basis of the lower court opinion filed January 22, 1990 with regard to this issue.

 Appellant's next claim of error is that the trial judge improperly denied her challenge for cause against prospective juror Charles McMonigle, a retired police detective. Appellant contends that Mr. McMonigle knew the assistant district attorney trying the case, was acquainted with some of the detectives named as possible witnesses, and was an active member in the Fraternal Order of Police at the time of the trial. The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence. *Commonwealth v. Colson*, 507 Pa. 440, 454, 490 A.2d 811, 818 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). This determination must be based on the potential juror's answers to questions and on his or her demeanor. *Id.* A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims,

or witnesses that the court will presume a likelihood of prejudice; or where the potential juror demonstrates a likelihood of prejudice by his or her conduct and answers to questions. *Id.* However, "[t]he decision on whether to disqualify is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion." *Id.*

▇▇ During voir dire, Mr. McMonigle indicated that he knew nothing about the case, that he would assess the credibility of police witnesses by the same standard he would use for any other witness, that he had no fixed opinion regarding appellants' guilt or innocence, that he would be fair and impartial and would base his verdict on the law and the evidence and not on sympathy, favoritism or prejudice. N.T. 4/5/89 at 225–30, 276–85. Mr. McMonigle stated that he did not believe that police officers are more believable than civilians, *id.* at 279–81, and that his prior contacts with Assistant District Attorney King did not cause him to form any opinion about Mr. King's credibility or reliability. *Id.* at 282–284. The potential juror also explained that he would not favor the Commonwealth over the defense in the instant case and that he would be fair regardless of the fact that he was acquainted with people involved in the case. *Id.* at 285.

Based on the above responses, the trial court refused to remove Mr. McMonigle for cause. Appellant then used one of her peremptory challenges to remove him. Based on the record, we find no indication that the trial court committed a palpable abuse of discretion in denying appellant's challenge for cause regarding Mr. McMonigle. The fact that appellant used all twenty of her peremptory challenges during the course of voir dire is not enough, in itself, to demonstrate palpable abuse on the part of the lower court. *See Commonwealth v. Colson, supra.*

▇▇ Appellant also argues that the trial court charged the jury incorrectly on the definition of malice by telling them that it was the same as the intent to kill. Our

supreme court has recently set forth the scope of review appropriate for a challenge to a jury charge:

> When evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. *Commonwealth v. Ohle*, 503 Pa. 566, 582, 470 A.2d 61, 70 (1983).

*Commonwealth v. Prosdocimo*, —— Pa. ——, ——, 578 A.2d 1273, 1274 (1990). The reviewing court will not find reversible error for every technical inaccuracy so long as the trial judge conveys what the jury needs to know to render its decision. *Id.*, at ——, 578 A.2d at 1276. In accordance with the directives of the Pennsylvania Supreme Court, we have carefully scrutinized the entirety of the trial court's jury charge. We find no error of law, nor do we find any indication that the jury instructions were so lengthy or confusing as to prevent the lay jury from rendering a proper verdict.

▇▇ The final allegation of error raised by appellant is that she was denied a fair trial because the prosecutor elicited testimony from Detective Szymczak that appellant had given an untruthful account of the events underlying this case and that appellant's true intent had been to rob the victim to obtain drug money. As discussed *supra*, the defense had elicited testimony on direct examination to the effect that Detective Szymczak did not believe appellant's initial statement to the police. As previously pointed out, the detective's assessment of the truth of appellant's statements was based on the blatant inconsistencies between her version of events and the nature of the victim's fatal injuries. The lower court has provided a sufficient rationale for admitting the testimony to which appellant objects. *See* trial court opinion filed 1/22/90 at 15. We affirm on that basis with regard to this issue.

Judgment of sentence affirmed.