**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Johnny PADILLA, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 22, 2007.

Filed May 8, 2007.

Eric J. Taylor, Reading, for appellant.

Jonathan H. Kurland, Asst. Dist. Atty., Reading, for the Com., appellee.

BEFORE: FORD ELLIOTT, P.J., and HUDOCK and POPOVICH, JJ.

OPINION BY HUDOCK, J.:

¶ 1 Appellant appeals from the judgment of sentence entered after a jury convicted him of involuntary deviate sexual intercourse, statutory sexual assault, aggravated indecent assault, indecent assault, and corruption of minors.[1] Appellant was sentenced to incarceration for a term of not less than five and one-half years to no more than fourteen years, plus five years consecutive special probation, and to register for lifetime reporting pursuant to Megan's Law II, 42 Pa.C.S.A. sections 9791–99.7. Appellant filed a post-sentence motion for a new trial, which the trial court denied. Thereafter, Appellant filed a timely notice of appeal and, as directed by the trial court, a Rule 1925(b) statement. The trial court filed a Rule 1925(a) opinion. After careful and thorough review of the record, we reverse and remand for a new trial.

¶ 2 Simply stated, the facts of this case are as follows: In January and February of 2005, Appellant lived at 342 Pear Street, Reading, Berks County, Pennsylvania. Also living in the house were Katrina Butler (Ms. Butler), Ms. Butler's fifteen-year-old daughter (the victim), Ms. Butler's step-sister Jennifer, who was also Appellant's girlfriend (Jennifer), and Ms. Butler's boyfriend. While Appellant lived in this house, he engaged in sexual relations with Jennifer, Ms. Butler and the victim.

¶ 3 In the early morning hours of February 23, 2005, Ms. Butler discovered Appellant and the victim in bed. Ms. Butler lifted the covers and observed the victim's pants and underwear below her knees; Appellant's sweat pants were low enough to expose pubic hair. Ms. Butler became very angry; she started yelling and hitting the victim and Appellant. Appellant immediately ran from the victim's bedroom, grabbed a jacket, and left the house. Ms. Butler then contacted the police.

¶ 4 Officer Christopher Bealer (Officer Bealer) of the Reading City Police Department arrived at 342 Pear Street at approximately 2:30 a.m. He spoke with Ms. Butler and then privately with the victim. The victim told Officer Bealer that she and Appellant had been having sexual relations for about two months and that they were consensual.

¶ 5 Appellant was twenty-one years old during his relationship with the victim. He was not married to her, and he was aware of her age.

¶ 6 On appeal, Appellant presents the following four questions:

A. Whether the trial court erred where it denied Appellant's mistrial motion after Commonwealth's witness testified that Appellant was recently released from prison, where the court had granted Appellant's motion *in limine* precluding Commonwealth from presenting any evidence pertaining to Appellant's prior incarceration?

B. Whether the trial court erred by denying Appellant's request for a continuance where Charlene Taylor, a necessary witness for Appellant to impeach two of the Commonwealth's witnesses, was unavailable?

C. Whether the trial court erred in ruling questioning complainant about her mental health diagnosis as irrelevant?

D. Whether the verdicts were against the weight of the evidence in that the testimony of Appellant's witnesses was more credible than the Commonwealth's witnesses?

---

1. 18 Pa.C.S.A. §§ 3123(a)(7), 3122.1, 3125(a)(8), 3126(a)(8) and 6301(a)(1), respectively.

Appellant's Brief at 6 (capitalization omitted).

 ¶ 7 Appellant's first issue challenges the trial court's order denying a mistrial following the testimony of Officer Bealer. "The denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion standard." *Commonwealth v. Sanchez*, 589 Pa. 43, 907 A.2d 477, 491 (2006). It is primarily within the trial court's discretion to determine whether defendant was prejudiced by the challenged conduct. On appeal, therefore, this Court determines whether the trial court abused that discretion. *Commonwealth v. Savage*, 529 Pa. 108, 602 A.2d 309, 311 (1992) (citation omitted). "An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Commonwealth v. Kriner*, 915 A.2d 653, 2007 WL 5749 (Pa.Super.2007) (internal quotations and citations omitted).

¶ 8 Before trial, Appellant sought to preclude evidence of his prior incarceration and parole status, the issuance of a PFA order against him, and his use of marijuana. Motion *in Limine*, 1/24/06, at ¶¶ 1–13. In granting the first and second parts of Appellant's motion *in limine*, the trial court stated: "With regard to the defense motions, the Court would certainly agree with the defense[ ] ... that the prior record of this man would certainly be irrelevant and extremely prejudicial to the outcome of the trial." N.T., 1/24–25/06, at 5. Notwithstanding the trial court's ruling, Officer Bealer testified as follows in response to an open-ended question about what he found when he arrived at the scene:

> When I got there I found—I was met at the door by the mother who was very upset, yelling and carrying on, practically mad at me, but she started to tell me how everybody was downstairs. She went and picked up this guy [Appellant]. He's a family friend. *Apparently he just got out of jail,* and so she was doing him a favor.

N.T., 1/24–25/06, at 89 (emphasis supplied). Defense counsel immediately requested a side bar and moved for a mistrial, to which the trial court responded: "I am going to have to grant it." *Id.* The prosecutor then challenged the trial court's ruling, as evidenced by the following exchange:

> [PROSECUTOR]: Well, I don't think so. I think you can give a curative instruction to solve the problem.
>
> THE COURT: Well, they know now. What did they put him in jail for?
>
> [DEFENSE]: He was directed to instruct his witnesses not to bring this up.
>
> THE COURT: You can try it.
>
> [PROSECUTOR]: I did. This guys [sic] half asleep right now.
>
> [DEFENSE]: And that is why I filed the motion in limine. I didn't want to take the chance.
>
> THE COURT: ... I can instruct them to see what happened [sic], but I do think under the circumstances if you were to push, push, push I'd have to grant it.
>
> [PROSECUTOR]: Leave me—at least give me until tomorrow morning to see if I can find anything.
>
> THE COURT: I don't think it's too——
>
> [PROSECUTOR]: I think a jury instruction——

N.T., 1/24–25/06, at 89–90. Apparently persuaded by the Commonwealth, the trial court stated:

> THE COURT: I'm going to start by instructing them to disregard the statements made by this witness and then we

will see what it looks like tomorrow morning.

[PROSECUTOR]: Fine. Thank you.

(The sidebar conference was concluded.)

THE COURT: I'm going to instruct the jury at this time to disregard the remarks made by this witness at this particular time. I will let counsel rephrase their questioning, and with that, go ahead.

*Id.* at 90–91. Officer Bealer finished his testimony, and the trial court adjourned for the day.

 ¶ 9 Before trial resumed the next morning, the Commonwealth presented the trial court with case authority in support of its position that a new trial was not necessary, because the curative instruction was sufficient to prevent any prejudice to Appellant. The trial court then asked defense counsel what she had in the way of authority to support the grant of a new trial. Defense counsel responded: "I have an insurance policy. I had filed motions in limine and they were to be instructed not to bring this out. This was your ruling." N.T., 1/24–25/06, at 97. Defense counsel also submitted legal authority in support of a mistrial. After further argument by counsel, the trial court denied Appellant's motion for a mistrial, stating:

It came out in such a fashion that it would not be inflammatory. Of course it is prejudicial. Any remarks any witness makes that are against your side in an action of law is going to be prejudicial by nature.

Inflammatory. It was—it could have been, but it was not delivered in such a fashion as to be inflammatory and also came as a hearsay interpretation and I also cured the jury or at least attempted to give a curative instruction to the jury immediately when it happened telling them to disregard it. And for that reason then I am going to overrule the

defense's motion for a mistrial. Note a specific exception to them because of it and then we will go back and go back.

In all honesty, the case law is so packed on both your sides, I will have to call it the way I see it.

N.T., 1/24–25/06, at 101–102. In its Rule 1925(a) opinion, the trial court further explained its decision, as follows:

The inadvertent reference to Appellant's prior jail time was a passing remark, not intentionally elicited by the Commonwealth. The witness did not say why Appellant was in prison. The Commonwealth did not attempt to take advantage of the remark. While this remark made by the witness was unfortunate, given the nature and circumstance in which it occurred, we think that the curative instruction was sufficient to eradicate any prejudice resulting from this reference. The jury was directed to disregard the witness' remarks and we can presume that they followed the court's instructions.

Opinion, 9/11/06, at 3–4. Like the trial court, the Commonwealth contends that the cautionary instruction "cured" any harm Appellant may have suffered as a result of Officer Bealer's testimony. We cannot agree. Rather, we are persuaded by Appellant's argument that the reference to his being in prison was particularly prejudicial in this case because the trial court had entered an "explicit order that no reference whatsoever must be made to [Appellant's] time in jail." Appellant's Brief at 16.

A motion *in limine* is a pre-trial application before a trial court made outside the presence of a jury, requesting a ruling or order from the trial court prohibiting the opposing counsel from referring to or offering into evidence matters so highly prejudicial to the moving party that curative instructions cannot allevi-

ate an adverse effect on the jury. The purpose of a motion *in limine* is two fold: 1) to provide the trial court with a pre-trial opportunity to weigh carefully and consider potentially prejudicial and harmful evidence; and 2) to preclude evidence from ever reaching a jury that may prove to be so prejudicial that no instruction could cure the harm to the defendant, thus reducing the possibility that prejudicial error could occur at trial which would force the trial court to either declare a mistrial in the middle of the case or grant a new trial at its conclusion. Further, a ruling on a pre-trial motion *in limine* provides counsel with a basis upon which to structure trial strategy. The motion *in limine* is an effective procedural device with no material downside risk. Once the court has pronounced its decision, the matter before it will proceed unless the Commonwealth elects to appeal an adverse ruling.

*Commonwealth v. Noll,* 443 Pa.Super. 602, 662 A.2d 1123, 1125 (1995) (quoting *Commonwealth v. Metzer,* 430 Pa.Super. 217, 634 A.2d 228, 232–33 (1993) (internal quotations and citations omitted)). For purposes of an appeal, the court's ruling on a motion *in limine* is the same as a pre-trial suppression order. *Noll,* 662 A.2d at 1125. "[A] pretrial suppression order is, in its practical effect, a final order ..." *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304, 308 (1963). "[T]he grant of a

motion *in limine* ... is identical in effect, to a suppression order and characterized by identical indicia of finality." *Bosurgi,* 190 A.2d at 308. Because "a motion *in limine* is effectively the same as a motion to suppress, any ruling thereon is also 'final, conclusive, and binding at trial,'..." *Metzer* 634 A.2d at 234 (citing current Pa.R.Crim.P. 580(j)). Thus, both a suppression motion and a motion *in limine* "settle, before trial, issues regarding the exclusion or admission of evidence." *Metzer,* 634 A.2d at 233.

¶ 10 Implicit in the Supreme Court's discussion in *Bosurgi* and its progeny about the finality of a pre-trial ruling for purposes of appeal is the importance of finality for purposes of trial strategy. *Metzer,* 634 A.2d at 233 (citing *Bosurgi,* 190 A.2d at 308); *see also, Commonwealth v. Cohen,* 529 Pa. 552, 605 A.2d 1212, 1215 (1992). Accordingly, "[a]bsent the introduction of new evidence that was unavailable before the [suppression/ *in limine*] ... hearing, a pre-trial ruling may not be reversed at trial." *Metzer,* 634 A.2d at 234.[2]

 ¶ 11 In Pennsylvania, "evidence of crimes other than those charged in the case before the jury may not be presented at trial to prove the defendant's 'criminal character' or his tendency toward committing criminal acts." *Commonwealth v. Howard,* 749 A.2d 941, 952 (Pa.Super.2000) (citation omitted). However, "mere 'pass-

---

**2.** *Compare, Commonwealth v. Warfield,* 418 Pa. 301, 211 A.2d 452 (1965), a procedurally atypical case. Defense counsel filed a motion to suppress the defendant's written statement to the police in which she admitted to killing and robbing the victim. The suppression court denied the motion. The defendant went to trial before a new judge. After the jury was selected and sworn, the defendant renewed her objection to admission of the written statement. The Commonwealth did not object. After a hearing outside the presence of the jury, the trial court found that the

statement was obtained in violation of the defendant's constitutional rights, and, therefore, was not admissible at trial. The Commonwealth did not appeal the trial court's ruling. During his opening to the jury, the prosecutor deliberately "stated that the defendant had given and signed a written statement admitting to the crimes charged." *Warfield,* 211 A.2d at 453. Defense counsel requested a mistrial, which the trial court granted in light of its pre-trial ruling that reference to the written statement was inadmissible.

ing references' to prior criminal activity will not necessarily require reversal unless the record illustrates definitively that prejudice results." *Commonwealth v. Satta-zahn,* 428 Pa.Super. 413, 631 A.2d 597, 608 (1993). "Prejudice results where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of [another] criminal offense." *Commonwealth v. Nichols,* 485 Pa. 1, 400 A.2d 1281, 1282 (1979). Determining whether prejudice has occurred is a fact specific inquiry. *Metzer,* 634 A.2d at 235.

¶ 12 In this case, defense counsel anticipated the prejudicial impact of Appellant's incarceration. As part of her trial strategy, she took precautions to prevent the disclosure of Appellant's incarceration to the jury by filing a motion *in limine.* Recognizing that such evidence "would certainly be irrelevant and extremely prejudicial to the outcome of the trial," N.T., 1/24–25/06, at 5, the trial court granted Appellant's motion, thereby excluding "any reference to [Appellant's] incarceration and parole." Order, 1/24/06. Because the Commonwealth did not appeal the trial court's order, the *in limine* ruling was "final, conclusive, and binding at trial." *Metzer,* 634 A.2d at 234. Accordingly, the Commonwealth was required to avoid "any reference to [Appellant's] incarceration and parole." [3] Furthermore, because no new evidence was presented to challenge the *in limine* ruling, the trial court was prohibited from reversing it at trial. *Id.*

¶ 13 The existence of the pre-trial *in limine* ruling in this case distinguishes it from the standard "passing reference-no prejudice" cases cited by the parties and described by the trial court as being "not helpful" because the "case law is so packed on both [parties'] sides ..." N.T., 1/24–25/06, at 100, 102. Thus, we consider two

cases involving alleged violations of a motion *in limine* in disposing of the instant matter. In *Commonwealth v. Treiber,* 582 Pa. 646, 874 A.2d 26 (2005), the trial court had precluded evidence of a 1995 arson in the defendant's home, but then allowed a threatening note authored by the defendant that read: "Get rid of the dogs or Ill [sic] kill them and burn you out again." *Treiber,* 874 A.2d at 31. The defendant argued that the word "again" referred to his involvement in other fires and contended that this word should have been redacted. The Supreme Court held that the trial court did not abuse its discretion in admitting the note. According to the *Treiber* Court, the note had no relationship to the *in limine* ruling because no specific prior fire was mentioned in the note, nor was there any evidence presented at trial that was related to a previous fire.

¶ 14 In *Commonwealth v. Edwards,* 762 A.2d 382 (Pa.Super.2000), the defendant was charged with robbery. A panel of this Court held that the trial court did not abuse its discretion in allowing testimony by a store manager and a police officer describing their encounters with the defendant in connection with an earlier shoplifting. The *Edwards* Court noted that:

> the testimony given by Mr. Organ and Officer Pigford was carefully circumscribed by the Trial Court. In a pretrial ruling on [Edwards'] Motion in Limine, the Trial Court expressly ruled that the Commonwealth could not give any testimony that would establish directly or by inference that Appellant was arrested for other offenses arising out of the [shoplifting] incident at Clover's Department Store.

*Edwards,* 762 A.2d at 388. Based on the evidence, this Court concluded:

> questions to the police officer in order to comply with the *in limine* ruling and prevent "any reference to Appellant's incarceration."

---

**3.** The prosecutor's observation, "This guys [sic] half asleep right now" underscores the Commonwealth's failure to direct specific

Our inspection of the testimony adduced at trial by the Commonwealth reveals that the Commonwealth complied with the Trial Court's ruling and did not elicit facts from Organ and Pigford to indicate that [the defendant] had been arrested or charged with criminal offenses in connection with [the shoplifting] incident.... That testimony did not expressly or by reasonable implication communicate to the jury the involvement of [the defendant] in another criminal offense.

*Edwards*, 762 A.2d at 388–89.

¶ 15 Unlike the restrictive *in limine* rulings in *Treiber* and *Edwards*, the instant ruling was much broader, prohibiting "any reference to [Appellant's] incarceration and parole." Unlike the "carefully limited testimony" of the witnesses in *Treiber* and *Edwards*, Officer Bealer's remark—"Apparently he just got out of jail"—was a direct reference to Appellant's recent incarceration. We can conclude, therefore, that this testimony, expressly and by reasonable implication, communicated to the jury Appellant's involvement in another criminal offense. Thus, this testimony was prejudicial to Appellant.

¶ 16 Having found that Officer Bealer's remark was prejudicial, we consider whether the trial court's cautionary instruction was sufficient to cure the prejudice. A trial court's curative instructions must be viewed in the context of what occurred, i.e., *what* evidence was previously excluded and subsequently allowed, and *when* it was allowed. *Metzer*, 634 A.2d at 235. Herein, the trial court had ruled, pre-trial, that "any reference to [Appellant's] incarceration and parole" was expressly prohibited. Yet, that is the very evidence Officer Bealer mentioned during his testimony. Then, after first agreeing with defense counsel that a mistrial was necessary, the trial court reversed itself and gave a curative instruction in which it

directed the jury "to disregard the remarks made by this witness at this particular time." N.T., 1/24–25/06, at 90–91.

¶ 17 Based on our review of the trial transcript, we find the circumstances surrounding the court's ruling to be troubling and the instruction itself too vague to have cured the prejudice. The trial court had granted Appellant's motion *in limine* and, upon violation of its order, agreed to a mistrial. Pressed by the prosecutor, however, the trial court instead opted to give a cautionary instruction and await further argument. The record suggests that the jury may have heard the side bar conference during which the trial court reversed itself. *See N.T.*, 1/24–25/06, at 90. Moreover, the trial court's instruction did not specifically direct the jury to disregard Officer Bealer's remark, "Apparently he just got out of jail." Then, despite the instruction, the prosecutor resumed his examination of Officer Bealer by repeating the officer's testimony that "Mom was upset," N.T., 1/24–25/06, at 91, thereby allowing the jury to hear again testimony the trial court had just instructed them to disregard.

¶ 18 The purpose of a pre-trial motion *in limine* is to prevent prejudicial evidence from reaching the jury, based on the theory that "once the 'skunk is in the box,' the odor is ineradicable." Blumenkopf, 16 N.Eng.L.Rev. at 173 (quotations omitted). Given the circumstances in this case, we conclude that the only remedy available to remove the prejudice to Appellant was for the trial court to declare a mistrial and to relist the case for trial before a different jury. *Metzer*, 634 A.2d at 236. Because the trial court failed to employ this remedy to dissipate the prejudice that accrued to Appellant as a result of the trial court's ruling regarding Officer Bealer's testimony, Appellant is entitled to a new trial. *Metzer*, 634 A.2d at 236.

¶ 19 Given our disposition of Appellant's first issue on appeal granting him a new trial, we need not address the remaining issues raised by Appellant in this appeal.

¶ 20 Judgment of sentence reversed; case remanded for a new trial. Jurisdiction relinquished.

¶ 21 FORD ELLIOTT, P.J., files a Concurring Statement.

CONCURRING STATEMENT BY FORD ELLIOTT, P.J.:

¶ 1 I respectfully disagree that the inadvertent and improper remark made by the witness regarding appellant's prior incarceration alone would warrant a new trial. I believe an appropriate cautionary instruction would have precluded the necessity of a mistrial under the circumstances of this case. However, it is because the instruction given by the trial court was woefully inadequate to address the prejudice caused that I agree a new trial is warranted.