J-S55011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AARON KING, | |
| Appellant | No. 2263 EDA 2013 |

Appeal from the Judgment of Sentence July 12, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000905-2010, CP-51-CR-0000906-2010

BEFORE:  BOWES, SHOGAN, and OTT, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 17, 2014**

Aaron King appeals from the aggregate judgment of sentence of twenty to forty years incarceration imposed by the trial court after a jury found him guilty of two counts each of involuntary deviate sexual intercourse ("IDSI"),[1] indecent assault of a person less than thirteen years of age, unlawful contact with a minor, corruption of a minor, and one count each of

_____

[1]  One count of involuntary deviate sexual intercourse ("IDSI") was by forcible compulsion under 18 Pa.C.S. § 3123(A)(1). The second count was for IDSI with a child less than thirteen years of age. Appellant was subject to mandatory minimum sentences based on the age of the victims.  Since the age of the victim was proven beyond a reasonable doubt, there are no ***Alleyne v. United States***, 133 S.Ct. 2151 (2013) issues.  ***See Commonwealth v. Watley***, 81 A.3d 108 (Pa.Super. 2013) (*en banc*); ***Commonwealth v. Matteson***, 96 A.3d 1064 (Pa.Super. 2014).

sexual assault, statutory sexual assault, and aggravated indecent assault of

a person less than thirteen years of age.[2]  We affirm.

The trial court delineated the salient facts as follows.

> In 2006, [the victims, S.C. and her cousin K.R.], then ten (10) years old, resided at the home of their aunt, [C.C.], Appellant, and several others, at 1334 Pike Street, Philadelphia, PA. [S.C.] testified that at some point during that year, she went into the bedroom her aunt shared with Appellant to get some clothes stored there, whereupon Appellant asked her to get some whipped cream for him.  When she returned with the whipped cream, Appellant was sitting on the bed with his robe open.  Appellant then forced the minor [c]omplainant to fellate him after he applied the whipped cream to his penis.  Appellant then instructed [S.C.] to tell [K.R.] to come to the bedroom. [K.R.] testified that when she came into the room she observed Appellant sitting on the bed and [S.C.] fellating him.[3] Appellant then directed [K.R.] to put her mouth on his penis to fellate him and she complied.

> [S.C.] testified of another occasion when she was thirteen (13) years of age during which Appellant sexually abused her. [S.C.] stated that she was in her bedroom after taking a shower when Appellant came in, locked the door behind him, pushed her down onto a couch, and inserted his penis into her vagina. [S.C.] also testified of a third incident in her aunt's bedroom where Appellant pulled her onto the bed, removed her pants, and inserted his penis into her vagina.

> [K.R.] described several additional incidents during which Appellant had sexual contact with her.  [K.R.] stated that on one occasion she and [S.C.] were getting dressed in their bedroom when Appellant entered the room and fingered both of their vaginas.  When [K.R.] told Appellant that he was hurting her, he

---

[2]  The jury acquitted Appellant of one count of rape of a child.

[3]  S.C. did not testify that K.R. witnessed this assault.  According to S.C., she was no longer in the room when K.R. was summoned.

stopped and left the room. Another incident occurred while she was bent over a bin attempting to retrieve detergent when Appellant came behind her, pushed her head and torso into the bin, pulled down her under garment, and inserted his penis into her vagina. She testified as to yet another incident while she was asleep on the living room couch and her Aunt [C.C.] instructed Appellant to wake her. Appellant then began rubbing her legs and touching her in a sexual way. [K.R.] told her aunt what occurred and she then yelled at Appellant.

Finally, both complainants testified of an incident that took place in the kitchen when [K.R.] was 14 years old. While bent over the sink Appellant came behind [K.R.] and forced himself onto her. [S.C.] testified that she entered the kitchen and left after she observed Appellant with his penis out and [K.R.] with her pants down. During that incident Appellant pulled [K.R.'s] skirt up, pulled her underpants down, and inserted his penis into her vagina. After the incident[,] [K.R.] left the kitchen crying and [K.R.] told [S.C.] what happened. Andrew Collins, who the children referred to as Mr. Drew and who lived in the house at the time, was nearby and inquired about what had occurred whereupon [S.C.] described what she had seen in the kitchen. Collins threatened to report this to the girls' uncle, however, they persuaded him otherwise, arguing that their uncle would do something harmful to Appellant which would cause [their uncle] trouble.

Throughout their ordeal, Complainants wrote letters describing the incidents of sexual contact with Appellant. They placed the letters in a shoebox and left it at a location in the living room of their grandmother's home which was located across from their Aunt [C.C.'s] house, hoping the box would be found. Y.R., [K.R.'s] mother, found and read the letters. The police were then contacted and Complainants gave a formal statement to detectives.

The defense presented the testimony of Andrew Collins who stated that he did not recall having a conversation with either Complainant about their being sexually assaulted and stated that they did not tell him that Appellant raped them.

The defense also presented the testimony of Stephanie, [C.C.'s] daughter, who stated that Appellant and her mother argued about Complainants' constant presence at [the] house

- 3 -

and that Appellant accused the children of being disrespectful to him. Appellant told [C.C.] that he did not want to be around them. Eventually Appellant moved out of the house and, in a[n] effort to appease Appellant, [C.C.] limited the Complainant's [sic] visits.

Trial Court Opinion, 12/5/13, at 1-4 (citations omitted).

During trial, Y.R., the mother of K.R., in response to a question by defense counsel, testified that Appellant was incarcerated in a prior case for the same type of conduct. Specifically, defense counsel asked, "Do you remember that [Appellant] lived there in 2006?" Y.R. replied, "I'm not sure whether that was the year he was locked up because he was locked up for a year for a previous case for the same thing." N.T., 7/26/12, at 103.[4] Defense counsel immediately moved for a mistrial based on the reference to a prior conviction and noted that the answer was completely non-responsive. The court denied the motion and asked if counsel desired a cautionary instruction. Defense counsel indicated that such an instruction could not cure the prejudice. The court, however, instructed the jury to disregard the answer by stating, "I'm going to advise the jurors to disregard the last comments by the witness." N.T., 7/26/12, at 105.

Trial counsel then proceeded to ask, "So if Aaron was not living in the house in 2006, then your daughter is a liar because she said she was

_____

[4] Appellant did not have a prior sex offense conviction. However, he had been charged in 2004 with a sex crime and the charges were dropped after the victim either recanted or did not appear for court.

molested in 2006 by Aaron.  Right?"  *Id*.  Y.R. answered, "I said I don't know if that was the year he got locked up.  That's what I said."  *Id*.  The trial court then asked that the jurors be removed and instructed the witness not to refer to Appellant's prior conduct.  Counsel did not renew her objection or request a mistrial based on this statement and the court did not issue an additional cautionary instruction to the jury.

The jury ultimately found Appellant guilty of the aforementioned charges.  The court found Appellant to be a sexually violent predator and sentenced Appellant to twenty to forty years imprisonment.  This timely appeal ensued.  The trial court directed Appellant to file and serve a concise statement of errors complained of on appeal.  Appellant complied, and the trial court authored its opinion.  The appeal was initially dismissed because counsel failed to file a brief.  However, following a motion to reconsider, this Court reinstated the appeal.  The matter is now ready for our review.  Appellant's sole issue on appeal is "[w]hether the trial court erred in failing to grant a mistrial where [a] prosecution witness testified regarding prior bad acts?"  Appellant's brief at 4.

We review the decision to deny a mistrial under an abuse of discretion standard.  *Commonwealth v. Akbar*, 91 A.3d 227, 236 (Pa.Super. 2014).  A mistrial should only be declared where the "incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial."  *Id*.  Evidence of bad acts is inadmissible to prove that a defendant

has bad character or a criminal propensity. ***See*** Pa.R.E. 404(b). However, bad acts evidence is admissible for a host of reasons including motive, absence of mistake, common scheme, to establish identity, and as part of the chain of events that form the history of the case. ***Commonwealth v. Brown***, 52 A.3d 320 (Pa.Super. 2012). The probative value of the bad acts evidence must outweigh its prejudicial impact in order to be admissible. ***Commonwealth v. Powell***, 956 A.2d 406, 419 (Pa. 2008).

Of course, a fleeting reference to bad acts in response to cross-examination does not automatically warrant a new trial. ***See Commonwealth v. Nichols***, 400 A.2d 1281, 1282 (Pa. 1979); ***cf. Commonwealth v. Hutchinson***, 811 A.2d 556 (Pa. 2002) (trial counsel not ineffective for failing to object to fleeting references of bad acts made by witnesses during cross examination). Here, the prosecutor instructed the witness before trial not to mention Appellant's prior conviction. Despite this admonition, Y.R. disregarded the instruction upon being questioned by defense counsel.

Appellant argues that Y.R.'s references to an alleged prior conviction, where she stated the conviction was for the same type of conduct for which he was on trial, was highly prejudicial. In support, he relies on ***Commonwealth v. Padilla***, 923 A.2d 1189 (Pa.Super. 2007). Therein, the twenty-one-year-old defendant was charged with involuntary deviate sexual intercourse, statutory sexual assault, aggravated indecent assault, indecent

- 6 -

assault, and corruption of a minor based on a non-forcible sexual relationship with the fifteen-year-old daughter of his girlfriend's sister.

Prior to trial, Padilla's attorney successfully litigated a motion *in limine* to preclude the introduction of his prior incarceration and parole status, a protection from abuse order against him, and his usage of marijuana. During the prosecution's direct examination, a police officer testified regarding what occurred when he arrived at the home of the young girl and her mother. In doing so, he set forth that the mother "went and picked up this guy [Padilla]. He's a family friend. Apparently he just got out of jail, and so she was doing him a favor." *Id*. at 1192 (emphasis omitted).

Defense counsel moved for a mistrial, which the court initially indicated it would grant. However, it then cursorily instructed the jury to disregard the comment and decided the next day that, after more thought and the presentation of case law by both sides, a mistrial was unwarranted. The trial court later opined that the remark was not intentionally elicited by the Commonwealth and was a passing reference to the defendant's incarceration. It added that the Commonwealth did not attempt to use the evidence in its favor and there was no evidence of why the defendant was in prison.

This Court ruled that the reference was "particularly prejudicial" because the trial court had granted the defendant's motion *in limine*. *Id*. at 1193. Since the Commonwealth did not avoid the reference to the

defendant's incarceration, and the court had granted the motion *in limine*, the **Padilla** panel reasoned that the case was distinguished "from the standard 'passing reference-no prejudice' cases[.]" **Id**. at 1195. Finally, the **Padilla** Court ruled that the cautionary instruction provided by the trial court was "too vague to have cured the prejudice." **Id**. at 1196.[5]

We find **Padilla** distinguishable on several grounds. First, this case did not involve a motion *in limine*, which the **Padilla** panel deemed critical. Also, importantly, the Commonwealth did not elicit the information. Finally, the evidence herein was not offered by a police witness who generally would be fully aware that mention of prior criminal activity is prohibited. Since the reference was made in passing, the Commonwealth did not instigate the admission of the evidence, the trial court instructed the jury to disregard the witness's first answer, and counsel did not object to the later answer, we find that Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judge Ott joins the Memorandum.

Judge Shogan Concurs in the Result.

---

[5]  The Commonwealth failed to submit a timely brief in this matter; accordingly, we do not set forth the arguments it belatedly forwarded. **See Commonwealth v. Stokes**, 38 A.3d 846 (Pa.Super. 2011). This Court granted the Commonwealth's sole request for an extension to file its brief. We directed the Commonwealth to timely file its brief by July 18, 2014. Nonetheless, the Commonwealth neglected to file its brief until September 16, 2014, well after the case had been submitted to this panel.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/17/2014</u>