J-S02028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON MCMASTER | |
| Appellant | No. 156 EDA 2015 |

Appeal from the PCRA Order December 8, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1202641-2003

BEFORE:  SHOGAN, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 03, 2016**

Jason McMaster appeals from the order of the Court of Common Pleas of Philadelphia County that dismissed his petition filed pursuant to the Post Conviction Relief Act.[1]  After careful review, we affirm.

On direct appeal, this Court summarized the underlying facts as follows:

> At about 8:45 p.m., on November 16, 2003, McMaster approached the victim, Joseph Briglia ("Briglia"), who was at a bar with several of his friends.  Briglia and his friends did not respond to McMaster's attempts to engage the group in conversation.  When the group did not respond, McMaster, who appeared to be intoxicated, returned to his seat at the far end of the bar.  Sometime within the next hour, McMaster again approached the group and attempted to engage them in conversation.  As he did so, he leaned over Briglia and dropped cigarette ashes on him.  Briglia asked McMaster to back away.

---

[1] 42 Pa.C.S. §§ 9541-9546.

When McMaster failed to leave, Briglia asked the bar manager for assistance. The bar manager asked McMaster to leave the group alone. As McMaster began to return to his seat, he stated that "you don't know who I am. I'll kill you." After a few minutes, McMaster again approached the group, this time stabling Briglia with a knife in the side of Briglia's neck. Briglia died as a result of the attack.

After a bench trial, the trial court convicted McMaster of [first degree murder and possession of an instrument of crime (PIC)]. The trial court sentenced McMaster to life in prison for his conviction of murder, and a concurrent prison term of two and one-half to five years for his conviction of [PIC].

*Commonwealth v. McMaster*, No. 2683 EDA 2004, unpublished memorandum at 1-2 (Pa. Super. filed September 11, 2006).

After this Court affirmed McMaster's judgment of sentence on September 11, 2006, he filed a petition for allowance of appeal, which our Supreme Court denied on March 27, 2007. The PCRA court summarized the subsequent history as follows:

On October 31, 2007, [McMaster] filed a *pro se* PCRA petition. He filed a supplemental *pro se* PCRA petition the following year. In his pleadings, [McMaster] alleged ineffective assistance of both trial and appellate counsel, and asked to represent himself. On July 10, 2008, the court conducted a hearing with regard to [McMaster's] request to proceed *pro se* and determined that [McMaster] no longer wanted to represent himself. The court subsequently appointed David Rudenstein, Esq. as PCRA counsel. On October 6, 2008, Mr. Rudenstein filed an amended PCRA petition.[2] Mr. Rudenstein also requested funds for a forensic psychologist and private investigator. On February 11, 2009, this court approved counsel's request.

[2] Counsel raised three issues in his amended PCRA petition: (1) trial counsel was ineffective for failing to call alleged eyewitness Thomas Esposito and Sylvia Ricchezza; (2) trial counsel was ineffective for failing to retain the services of an expert witness to determine whether [McMaster's] mental health issues and intoxication on the

- 2 -

night in question would have prevented him from forming a specific intent to kill; and (3) all counsel were ineffective for failing to preserve a weight of the evidence claim.

Subsequently, Dr. Stephen Samuels, a well-respected forensic psychologist, interviewed and examined [McMaster], and a private investigator looked into [McMaster's] eyewitness claims. On May 13, 2010, based upon the findings of Dr. Samuels and the private investigator, Mr. Rudenstein informed the court that he could not successfully present a claim of ineffective assistance for failing to retain a medical expert or failing to present Mr. Esposito and Ms. Ricchezza as witnesses at trial. Counsel still intended to present the remaining PCRA claim.

In response to Mr. Rudenstein's determination, [McMaster] filed multiple *pro se* pleadings – the first was entitled "Motion to Amend PCRA Petition" and the second was a written request that Mr. Rudenstein be removed. On April 25, 2011, the court permitted Mr. Rudenstein to withdraw and ordered new counsel be appointed.

On April 29, 2011, Lee Mandell, Esq., was appointed PCRA counsel. On February 27, 2012, Mr. Mandell filed a supplemental PCRA petition alleging after-discovered evidence in the form of a witness, Kenneth Blanda, whom trial counsel failed to call at trial. The case was continued on numerous occasions over the next two years to allow [McMaster] and PCRA counsel to investigate this new claim. During this same time, [McMaster] filed additional *pro se* PCRA filings in an attempt to supplement counsel's pleadings. At a status conference on October 4, 2013, all parties agreed that [McMaster] was entitled to an evidentiary hearing limited to the issue regarding counsel's alleged failure to call Kenneth Blanda.

On May 2, 2014, this court conducted an evidentiary hearing. [McMaster's] father . . . and Kenneth Blanda testified for the defense. At the conclusion of the hearing, the court took the matter under advisement and directed the parties to submit proposed Findings of Fact and Conclusions of Law.

On December 15, 2014, after reviewing the trial and evidentiary hearing record and considering the arguments and briefs of counsel, this court dismissed the instant PCRA petition for lack of merit.

PCRA Court Opinion, 2/26/15, at 1-3.

On January 9, 2015, McMaster's counsel filed a notice of appeal, and on February 11, 2015, in response to an order from the court, counsel filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued its Rule 1925(a) opinion on February 26, 2015.

On February 23, 2015, McMaster petitioned this Court for permission to proceed *pro se*. We remanded the matter to the PCRA court to conduct a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998). On March 16, 2015, the PCRA court determined that McMaster's decision to waive appellate counsel was knowingly, voluntarily and intelligently made. The court permitted appellate counsel to withdraw and granted McMaster's request to file a supplemental Rule 1925(b) statement.

McMaster filed his supplemental statement on April 22, 2015, and the PCRA court filed a supplemental opinion on July 6, 2015.

On appeal, McMaster raises the following issues for our review:

1. Was the evidence sufficient to sustain a verdict of first degree murder when the Commonwealth's evidence strongly suggested that [McMaster] was so in toxicated [sic] that he could not have formed an [sic] spicific [sic] intent to kill?

2. Was the guilty verdict of murder in the first degree against the weight of the evidence because [McMaster] was so intoxicated, and was assaulted by four individuals, that he could not have formed a specific intent to kill, and the elements of first, second or even third degree [murder] were clearly not present?

Appellant's Brief at 2.

Clearly, the PCRA does not provide relief for the claims of trial court error that McMaster raises in his statement of questions presented. *See* 42 Pa.C.S. § 9543(a). However, because McMaster's brief discusses issues that (1) are cognizable under the PCRA, (2) were preserved in his Rule 1925(b) statement; and (3) were addressed by the PCRA court in its opinion, we will reach the substance of his argument. *See Commonwealth v. Phillips*, 580 A.2d 840, 842 n.3 (Pa. Super. 1990) ("Although our review of the issues raised on appeal has been hampered by the defects in appellant's brief, we are not precluded from reaching the merits of appellant's claim as the lower court has addressed each contention.").

In reviewing an appeal from the denial of PCRA relief, "our standard of review is whether the findings of the court are supported by the record and free of legal error." *Commonwealth v. Martin*, 5 A.3d 177, 182 (Pa. 2010) (citations omitted).

McMaster's claims all involve allegations of ineffectiveness of trial counsel. To be eligible for relief under the PCRA, McMaster must prove by a preponderance of the evidence that his conviction resulted from "ineffective assistance of counsel which, in the circumstances of the particular case so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Ousley*, 21 A.3d

1238, 1244 (Pa. Super. 2011). To prevail on an ineffectiveness claim, the defendant must show that the underlying claim had arguable merit, counsel had no reasonable basis for his or her action, and counsel's action resulted in prejudice to the defendant. **Commonwealth v. Prince**, 719 A.2d 1086, 1089 (Pa. Super. 1998).

McMaster first argues that his trial counsel was ineffective for failing to effectively cross-examine Steven DiGregorio and Edward Renzi, who were witnesses to McMaster's confrontation with the victim at the bar.

At trial, DiGregorio and Renzi both testified that McMaster walked across the bar and stabbed the victim in the neck. Renzi testified that after he saw McMaster swing at the victim, he grabbed McMaster by the back of his sweatshirt. At that point, he did not realize that the victim had been stabbed. N.T. Trial, 9/22/01, at 85-86, 114-16. DiGregorio testified that he grabbed McMaster and threw him off the victim after he saw McMaster punch the victim's face. N.T. Trial, 9/21/04, at 85-88.

McMaster asserts that if trial counsel had questioned the witnesses about their "differing testimonies," trial counsel could have achieved "a better outcome on the part of the appellant, even proving justification/self-defense on the behalf of the appellant." Appellant's Brief, at 7.

Our review of the trial testimony indicates that counsel engaged in lengthy cross-examination of DiGregorio and Renzi. Although counsel attempted to identify inconsistencies in their testimony, they steadfastly maintained that McMaster was not provoked or threatened before he

approached the victim and stabbed him in the neck. Accordingly, McMaster has failed to establish there is arguable merit to his claim that counsel provided ineffective assistance by failing to properly cross-examine the eyewitnesses.

McMaster next asserts that counsel was ineffective for failing to request a mistrial after the court admitted McMaster's written statement to Detective Dennis Dusak. He argues that Detective Dusak knew that he had difficulty reading and writing, and that the detective intentionally misled McMaster into believing that he had written down McMaster's statement *verbatim*, when in fact, he had written down a version that made McMaster appear guilty. McMaster fails to note that counsel relied on McMaster's statement to Detective Dusak, and the circumstances surrounding the statement, to support a defense that McMaster was incapacitated and was unable to form an intent to kill at the time of the murder.

At trial, McMaster attempted to prove that he could not formulate the specific intent to kill because he was bipolar and intoxicated at the time of the stabbing. Counsel relied on McMaster's statement to Detective Dusak to support his diminished capacity defense.

In the statement, McMaster averred that he had been drinking earlier on the night of the stabbing. During cross-examination, Detective Dusak admitted that he smelled alcohol on McMaster during the interview. Defense counsel also got Detective Dusak to admit that McMaster told him that he could not write and "could only read a little." N.T. Trial, 9/22/04, at 206.

Counsel argued that McMaster's signature on the statement, which was misspelled and written on several lines, demonstrated that he was unable to form the specific intent to kill because he was a bipolar individual of limited cognitive skills who was drunk when the killing occurred.

Because counsel used McMaster's statement to support a diminished capacity defense, he had a reasonable basis for not objecting to the admission of the statement. Accordingly, McMaster's claim of ineffective assistance must fail. *See Ousley*, *supra*.

McMaster next argues that counsel was ineffective for failing to call Sylvia Ricchezza, an employee of the bar, as a witness.

"Where a[n appellant] claims that counsel was ineffective for failing to call a particular witness, we require proof of that witness's availability to testify, as well an adequate assertion that the substance of the purported testimony would make a difference in the case." *Commonwealth v. Clark*, 961 A.2d 80, 90 (Pa. 2008). With respect to such claims, an appellant must demonstrate:

> (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

*Commonwealth v. Michaud*, 70 A.3d 862, 868 (Pa. Super. 2013) (citation omitted).

At trial, the court colloquied McMaster regarding his complaint that counsel failed to contact several witnesses including Ricchezza. Defense counsel stated:

> [McMaster] also indicated that Sylvia, the barmaid, would, although he indicated that she would be [a] helpful witness to him, and I indicated to him that her statement, as I showed it to him, was not what he said it would be and they were attacking him and that he was defending himself. His indication was that he had some information that that was going to be different when she came and testified.

N.T. Trial, 9/22/04, at 101.

Although counsel believed that Ricchezza's testimony would be harmful to the case, he hired an investigator to locate her. When the investigator was unsuccessful, counsel asked the Commonwealth to assist in finding her. The Commonwealth indicated that it had subpoenaed Ricchezza and tried to contact her, but that it was unable to do so. *Id.* at 101-02.

After hearing argument from counsel and the Commonwealth, the trial court told McMaster:

> As far as the barmaid is concerned, Mr. McMaster, it's clear to me that your lawyer reviewed her statement, and notwithstanding his professional judgment, that based on what's in the statement, she would not be a helpful witness. Based on what you said to him, he's doing everything possible with the help of the Commonwealth in locating this woman, so he'll have a chance to speak with her again. It's going to be his decision as a lawyer to make the determination as to whether or not she would be helpful or harmful to you in the end.

*Id.* at 102-03.

McMaster attached to his *pro se* PCRA petition two affidavits from Ricchezza. The first stated that McMaster's counsel never contacted her and that she never told counsel that she was in rehab. This affidavit was unsigned and undated. The second affidavit indicated that she was available to testify but was never notified of trial or subpoenaed. The affidavit provided no details as to what the substance of her testimony would have been.

An evidentiary hearing is properly denied on a claim that counsel was ineffective for calling a witness where the appellant failed to include a signed certification as to each intended witness, including name, address and the substance of the proposed testimony. ***Commonwealth v. Brown***, 767 A.2d 576 (Pa. Super. 2001).

McMaster failed to prove that the absence of Ricchezza's testimony was prejudicial. Therefore, the court properly dismissed the unproven allegations of ineffectiveness. ***See Commonwealth v. Lawson***, 762 A.2d 753, 756-57 (Pa. Super. 2000) (counsel not ineffective for failing to present witness where there was no reason to believe outcome at trial would have been different if testimony had been heard in court).

McMaster next argues that trial counsel was ineffective for coercing him into waiving his right to a jury trial. Although McMaster initially raised this issue in his *pro se* PCRA petition, it is waived because it was not raised in McMaster's counseled Rule 1925(b) statement or in his *pro se* supplemental Rule 1925(b) statement.

Rule 1925(b)(4)(ii) provides, in relevant part, that "[t]he [s]tatement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Failure to raise an issue in a Rule 1925(b) statement will result in waiver. *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). Accordingly, we are precluded from reviewing this issue.[2]

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/3/2016

---

[2] Referring to the evidentiary hearing on May 2, 2014, McMaster states, "Kenny Blanda did testify that . . . McMaster . . . was in fact assaulted by the victim and two of his friends before (McMaster) pulled [] his pocket knief [sic], and acted completely in self-defense." Appellant's Brief, at 5. He further states, "a witness has come forward that was present on the night of November 16, 2003, Mr. Kenneth Blanda, who had nothing to benefit from doing so, and did so of his own accord." *Id.* at 12. These statements regarding Blanda present no issue for us to address. *See Commonwealth v. D'Amato*, 856 A.2d 806, 814 (Pa. 2004) (relief unavailable based upon underdeveloped claims for which insufficient arguments presented on appeal).