J-S52025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIAM F. COLON | |
| Appellant | No. 1701 EDA 2015 |

Appeal from the Judgment of Sentence entered January 16, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0015317-2013

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED JANUARY 10, 2017**

Appellant, William F. Colon, appeals from the judgment of sentence imposed on January 16, 2015 in the Court of Common Pleas of Philadelphia County following his convictions of first-degree murder, violations of the Uniform Firearms Act ("VUFA"), and possessing the instrument of a crime ("PIC").[1]  Appellant argues the evidence was insufficient to support his convictions and that the guilty verdicts were against the weight of the evidence.  He also asserts trial court error for denying requests for a mistrial and for delivering a jury instruction concerning alibi evidence.  Following review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 6101 *et seq.,* and 907, respectively.

The trial court condensed the underlying facts of the case as follows:

Abba Abukanan was a drug addict. A couple of days prior to October 25, 2012, Abukanan went to the area of 5th and Cornwall Streets in Philadelphia to purchase illegal drugs [from Appellant and Jimmy Santos] using fake money[.] [Appellant and Santos] did not appreciate that Abukanan was attempting to pawn off fake money to them and an altercation ensued. [Appellant] and Santos chased Abukanan off the block and told him not to come back. Abukanan, being a drug addict[,] returned on October 25, 2012, money in hand to buy more illicit drugs[. W]hen he was recognized, [Appellant and Santos] were alerted to his presence. Jimmy Santos shot Abukanan in the left wrist and leg. [Appellant] then shot Abukanan in the back of the head, executing him. When police arrived on the scene, Abukanan was found dead, with three gunshot wounds and the money still gripped in his hand.

Trial Court Rule 1925(a) Opinion ("T.C.O."), 7/29/15, at 3-4 (references to notes of testimony omitted).

As the trial court explained, Appellant was arrested on July 11, 2013 and was charged with, *inter alia*, first-degree murder, VUFA and PIC. T.C.O., 7/29/15, at 1. Following a trial that began on January 7 and concluded on January 15, 2015, a jury convicted Appellant of those crimes.[2] He was sentenced to life in prison without parole for his first-degree murder conviction and concurrent sentences of five to ten years and three and one-half to seven years for his VUFA and PIC convictions, respectively. *Id.* at 2.

---

[2] Appellant was tried jointly with Jimmy Santos ("Santos") who was sentenced to an aggregate term of not less than thirty nor more than sixty years in prison for his convictions of third-degree murder, 18 Pa.C.S.A. § 2502(c), VUFA and PIC. Santos' related appeal, challenging the sufficiency of evidence as well as a jury instruction on third-degree murder, is docketed at No. 2503 EDA 2015. The appeals have not been consolidated.

Appellant filed a timely appeal from his judgment of sentence. Both he and the trial court complied with Pa.R.A.P. 1925. Appellant now presents six issues for our consideration:

A. Was the evidence not insufficient to sustain Appellant's convictions where Julio Rosa's and Alex Cruz's statements to police made given (*sic*) many months after the shooting, were incredible, and where they both denied the truth of those statements at trial?

B. Were not Appellant's convictions against the weight of the evidence where the Commonwealth's witnesses gave inconsistent statements and denied having seen Appellant commit the shooting at trial, and where a defense witness testified at trial that he saw someone other than Appellant commit the shooting?

C. Did not the trial court commit reversible error in denying Appellant's motion for mistrial where the prosecutor improperly bolstered the credibility of the statements given to police by key Commonwealth witness Alex Cruz by asking Cruz if Cruz remembered telling him that Appellant and the co-defendant were involved in the shooting?

D. Did not the trial court commit reversible error in denying Appellant's motion for mistrial where the prosecutor [] asked Cruz if Cruz remembered telling him that Appellant and the co-defendant were involved in the shooting as it constituted unsworn inadmissible hearsay by the prosecutor in regard to key evidence against Appellant?

E. Did not the trial court commit reversible error in denying Appellant's motion for mistrial when, during cross-examination of defense witness Juan Inglesias, rather than posing a question, the prosecutor baldly stated that Appellant did not say anything about the identity of the shooter because he was the one committing the murder?

F. Did not the trial court commit reversible error in [its] charge to the jury on [alibi] by instructing the jurors that they could consider Appellant's failure to provide timely notice of alibi to the Commonwealth in considering his alibi evidence?

Appellant's Brief at 10.

In his first issue, Appellant challenges the sufficiency of the evidence in light of the "incredible" statements given to police by two witnesses months after the shooting and in light of the fact those witnesses denied the truth of those statements during trial. As a challenge to sufficiency of the evidence, Appellant presents a question of law. *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (citing *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)). As this Court reiterated in *Antidormi*:

> Our standard of review is well-established:
>
> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Id.* at 756 (quoting *Commonwealth v. Estepp*, 17 A.3d 939, 943-44 (Pa. Super. 2011) (additional citation omitted)).

Although he was convicted of VUFA and PIC as well as first-degree murder, Appellant limits his sufficiency argument to murder only. Appellant's Brief at 17-19. We shall do likewise. "To sustain a conviction for first-degree murder, the Commonwealth must prove that the defendant acted with the specific intent to kill, that a human being was unlawfully killed, that the accused did the killing and that the killing was done with deliberation." *Commonwealth v. Simpson*, 754 A.2d 1264, 1269 (Pa. 2000) (citation omitted).

Appellant contends that the only evidence linking Appellant to the murder of Abukanan were statements made by prosecution witnesses Rosa and Cruz months after the incident. Appellant's Brief at 17. He asserts Rosa, who was facing a probation violation, gave a statement only after a detective promised to help him with his probation officer. Further, he contends Rosa was high on drugs at the time of the shooting and when he was interviewed by police. Also, he argues, Rosa denied the truth of his statements at trial, claiming he did not observe the shooting. *Id.* at 17-18.

As to Cruz, Appellant argues that Cruz first told police he knew nothing about the shooting, and then acknowledged in a statement more than seven months later that he saw Santos shoot the victim in the leg and Appellant shoot the victim in the head. *Id.* at 18. Cruz likewise denied the truth of

that statement at trial and again claimed he did not witness the shooting. *Id.* at 18-19.

Appellant's accounts, while not necessarily factually inaccurate, do not take into consideration all the evidence, viewed in the light most favorable to the Commonwealth as verdict winner. As the trial court observed, although Rosa testified at trial that he had not seen the shooting, "his prior testimony and statements clearly show that he saw the deceased arguing with Jimmy Santos, that he heard a gunshot then saw the decedent get shot in the head by [Appellant]." T.C.O., 7/29/15, at 5 (reference to notes of testimony omitted). Further, Cruz, who was unable to recall the events surrounding the shootings at trial, gave a prior statement to homicide detectives indicating that he saw "Taz" (a/k/a Santos) shoot the victim in the leg and "Willie" (a/k/a Appellant Colon) shoot him in the head. *Id.* (reference to notes of testimony omitted). To the extent there were inconsistencies in the testimony of those witnesses, it was up to the jury to determine the credibility of their testimony and the testimony of the officers who interviewed those witnesses. Again, "the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Antidormi*, 84 A.3d at 756.

Our review of the record confirms that the evidence was sufficient to enable the jury to find every element of first-degree murder beyond a reasonable doubt. The record establishes that Appellant acted with the

specific intent to kill his victim by shooting him in the back of the head, that the victim was unlawfully killed, and that Appellant did the killing with deliberation. Appellant's first issue fails.

Appellant next complains that the verdict was against the weight of the evidence. As this Court has explained:

> On this issue, our role is not to consider the underlying question of whether the verdict was against the weight of the evidence. Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Habay*, 934 A.2d 732, 736-37 (Pa. Super. 2007) (internal citations omitted), *appeal denied*, 954 A.2d 575 (Pa. 2008). "[A] trial court's denial of a post-sentence motion 'based on a weight of the evidence claim is the least assailable of its rulings.'" *Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012) (quoting *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008)).

In support of his weight of the evidence claim, Appellant again looks to the "inconsistent and incredible" testimony of Rosa and Cruz. Appellant's Brief at 19. He also directs our attention to the testimony of defense witness, Juan Inglesias, who testified that Santos' gun jammed and that another individual—not Santos or Appellant—shot and killed the victim while Appellant was standing with other individuals in front of a nearby residence.

*Id.* (references to notes of testimony omitted). Appellant does not acknowledge that Inglesias, while not Appellant's biological father, is married to Appellant's mother and did not approach Appellant's attorney with his factual account of the shooting until four days after the trial began. Notes of Testimony, Trial, 1/14/15, at 24-25.

Again, it is within the province of the jury to make credibility determinations and this Court will not reweigh credibility determinations on appeal. "Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve." *Sanders*, 42 A.3d at 331 (citing *Commonwealth v. Tharp*, 830 A.2d 519, 528 (Pa. 2003)). "A jury decision to credit certain evidence and reject other testimony is appropriate; therefore, the trial court did not abuse its discretion in concluding that its sense of justice was not shocked by the verdict." *Id.* Based upon our review, we find no abuse of discretion on the part of the trial court for concluding its sense of justice was not shocked by the verdict. Appellant's second issue fails.

In his third, fourth and fifth issues, Appellant claims the trial court committed reversible error by denying his motions for mistrial. We review the denial of a motion for mistrial using an abuse of discretion standard. *Commonwealth v. Padilla*, 923 A.2d 1189, 1192 (Pa. Super. 2007), *appeal denied*, 934 A.2d 1277 (Pa. 2007). "It is primarily within the trial court's discretion to determine whether a defendant was prejudiced by the

challenged conduct. On appeal, therefore, this Court determines whether the trial court abused that discretion." **Id.** (citation omitted).

Appellant's first mistrial claim stems from the denial of a mistrial after the prosecutor "improperly bolstered the credibility" of statements given by Commonwealth witness Cruz when the prosecutor asked the witness if he remembered telling the prosecutor that Appellant and Santos shot the victim. Appellant's Brief at 21-22. Essentially, Appellant argues a mistrial was warranted because the prosecutor improperly bolstered Cruz' statement, given to police months after the shooting, that he saw Appellant and Santos shoot the victim. Appellant also contends the prejudice he suffered as a result of the prosecutor's question was not cured by the trial court's general instructions to the jury, advising them that questions asked of witnesses are not evidence. **Id.** at 22.

The exchange that took place at trial is as follows:

Q. The second time we met, did I ask you about your concerns?

A. Yeah.

Q. What did you tell me about your concerns?

A. I don't remember.

Q. Do you remember me asking you about the information in your statement, about what happened the night of the murder?

A. No.

Q. Do you remember me asking you if you remember the names of the men involved?

A. No.

Q. Do you remember telling me that it was Will and Taz?

Defense counsel: Objection.

The Witness: No.

The Court: Sustained.

Defense counsel: Motion to strike. Motion for mistrial.

The Court: Denied.

Notes of Testimony, Trial, 1/12/15, at 74.

In its 1925(a) opinion, the trial court explained that its preliminary instructions to the jury included an admonition that the jury was not bound by anything either the court or counsel "might express about the credibility, guilt, innocence, weight of evidence, facts proven; none of that. That's all up to you. . . . Questions put to witnesses are not evidence. Same is true of any questions I might ask." T.C.O., 7/29/15, at 8-9 (reference to notes of testimony omitted). Because there was no reason to believe the jury did not follow the instructions, a mistrial was not necessary. *Id.* at 10. "[T]he prosecutor did not improperly bolster the credibility of the statements given to the police by asking if the witness recalled the statements he had previously provided. The fact that the prosecutor may have been present during the rendering of that statement is not bolstering the credibility of the statement." *Id.* We agree. We find no abuse of discretion on the part of the trial court for denying a mistrial relating to the prosecutor's questions.

Appellant next presents a second challenge to the trial court's denial of a mistrial based on the same exchange between the prosecutor and witness Cruz, claiming the prosecutor's questions constituted unsworn inadmissible hearsay regarding key evidence against Appellant. We reject Appellant's contention that the prosecutor's question constituted hearsay testimony. As the Commonwealth explains, "[t]he prosecutor simply asked Cruz if he remembered making a statement, Cruz said he did not, and the jurors were specifically instructed that questions are not evidence. Thus, no hearsay was put before the jury." Commonwealth Brief at 16-17 (citing **Commonwealth v. LaCava**, 666 A.2d 221, 231 (Pa. 1995) ("[I]t is well settled in the law that attorney's statements or questions at trial are not evidence.") (additional citations omitted)). The trial court did not abuse its discretion in denying a mistrial based on a claim of hearsay.

In his third claim of error stemming from denial of a mistrial, Appellant contends he was prejudiced by remarks from the prosecutor during the course of the cross-examination of alibi witness, Juan Inglesias. The prosecutor asked Inglesias what Appellant said about the individual who shot the victim in the back of the head. Defense counsel interrupted, saying there was no testimony that Appellant said anything, and if Appellant did not say anything, how could the witness testify as to what was said. Notes of Testimony, Trial, 1/14/15, at 35-36. The trial court treated the interruption as an objection and sustained it, after which the prosecutor commented, "He

didn't say anything, sir, because he was the one committing the murder. He didn't know who it was because he did it." *Id.* at 36. Defense counsel responded, "Objection. Motion for Mistrial." *Id.*

The trial court denied defense counsel's motion for mistrial and explained, in its Rule 1925(a) opinion, that "[t]he law is clear that comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in the juror's minds, a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." T.C.O., 7/29/15, at 10-11 (citations and internal quotations omitted). We agree the motion for mistrial was properly denied.

As the Commonwealth observed, when determining whether a prosecutor's comments were improper, the comments "must be examined within the context of defense counsel's conduct." Commonwealth Brief at 20 (quoting ***Commonwealth v. Chmiel***, 889 A.2d 501, 543 (Pa. 2005)). "Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks." *Id.* (quoting ***Commonwealth v. Watkins***, 108 A.3d 692, 720 (Pa. 2014)). Here, a review of the exchange suggests that the prosecutor's comment was invited by defense counsel and was made in response to the question, even if rhetorical, posed by defense counsel. We cannot help but also observe that the prosecutor's comments were in response to a speaking objection by defense counsel.

The learned Dissent takes issue with our characterization of the prosecutor's remarks as being invited by defense counsel and made in response to defense counsel's question. Concurring and Dissenting Memorandum at 3.[3] The Dissent contends that the statement constitutes an "improper commentary on the guilt of Appellant, the unavoidable effect of which was to form in the jury's mind a prejudice against Appellant[.]" *Id.* at 3-4. As such, the Dissent suggests the trial court's denial of Appellant's mistrial motion constituted reversible error. *Id.* at 4. Respectfully, we cannot agree. The prosecutor was not expressing an improper personal opinion on the guilt of the Appellant as stated by the learned Dissent. Rather, the prosecutor was responding to defense counsel's question by offering an answer that was supported by the evidence. While this answer in the form of argument no doubt was technically objectionable as not constituting a question for examination, it cannot be said that this argument constitutes grounds for mistrial where the statement based upon what the evidence supports would have been fair play for closing argument. Again, it is within the trial court's discretion to determine whether a defendant was prejudiced by the challenged conduct and it is this Court's duty to determine whether the trial court abused that discretion. *Padilla*, 923 A.2d at 1192.

_____

[3] As indicated in the Concurring and Dissenting Memorandum, its author joins in the Majority's analysis of the first four issues but dissents as to the fifth and sixth issues. Concurring and Dissenting Memorandum at 1.

The trial court concluded Appellant was not prejudiced by the prosecution's statement and we find no abuse of discretion in its finding.

Alternatively, as the trial court suggested,

It is clear that the prosecutor's remark, although not technically phrased as a question, was a question presented to a witness on cross-examination, based upon at least two prior witness[es'] statements presented to the jury. The statement at issue did not unfairly prejudice the jury by preventing it from objectively weighing the conflicting evidence and rendering a fair verdict. Both Julio Rosa and Alex Cruz had previously identified [Appellant] as the individual who had shot Abukanan in the head. The prosecutor was confronting the defense alibi witness with evidence previously presented to the jury and the unavoidable effect of this is not such as to prejudice the jury.

T.C.O., 7/29/15, at 11.

Whether considered a comment made in response to defense counsel's interruption or a question presented to Appellant's alibi witness in the context of evidence presented by Commonwealth witnesses, we do not find the prosecutor's statement constitutes personal opinion or that it resulted in prejudice to Appellant in view of the evidence presented at trial. Therefore, the trial court did not abuse its discretion in denying Appellant's motion for mistrial.

In his sixth and final issue, Appellant argues the trial court committed reversible error by delivering an alibi instruction. As this Court has explained:

[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this

Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Antidormi*, 84 A.3d at 754 (quoting *Commonwealth v. Trippett*, 932 A.2d

188, 200 (Pa. Super. 2007) (citation omitted)).

As part of its charge to the jury, the trial court stated:

In this case, [Appellant] has presented evidence of an alibi; that is, that he was not present at the scene or was rather at another location at the precise time the crime took place.

The rules of criminal procedure require that a defendant file a notice of alibi defense within 30 days of [a] defendant's arraignment. No such notice was filed with the clerk in this case.

You should consider this evidence, both the alibi and the failure to give timely notice of the alibi, along with all the other evidence in the case in determining whether the Commonwealth met its burden of proving beyond a reasonable doubt that the crime was committed and that [Appellant] himself committed it.

[Appellant's] evidence that he was not present, either by himself or together with other evidence, may be sufficient to raise a reasonable doubt of his guilt. If you have a reasonable doubt of [Appellant's] guilt, you must find him not guilty.

Notes of Testimony, Trial, 1/15/15, at 17-18.

Appellant does not suggest that the rules do not require timely

disclosure of an alibi witness, nor does he deny that he failed to file the

required notice. Instead, he suggests that Pa.R.Crim.P. 567(B)(1)[4] does not

_____

[4] Pa.R.Crim.P. 567(B) (Failure to File Notice) provides, in relevant part:

*(Footnote Continued Next Page)*

- 15 -

call for a jury instruction indicating that the lack of notice may be considered along with all other evidence. It is his position that such an instruction did not serve the interests of justice in this case. Appellant's Brief at 27. He argues that the instruction served to deny Appellant a "fair trial by unjustly weakening this evidence in the eyes of the jurors." *Id.* at 26. We disagree. Considering the entirety of the charge, we find no abuse of discretion in the trial court's inclusion of language informing the jury of the requirements for giving notice of an alibi and Appellant's failure to comply with those requirements. Importantly, the trial court also instructed the jury that Appellant's alibi evidence indicating he was not present at the scene, either by itself or with other evidence, could be sufficient to raise reasonable doubt of his guilt, in which case the jury must find him not guilty. Notes of Testimony, Trial, 1/15/15, at 17-18. As mentioned above and as the Commonwealth correctly suggests, the trial court could have excluded the alibi testimony in its entirety for Appellant's failure to identify an alibi witness—his own stepfather—until the fourth day of trial. Commonwealth Brief at 26 (citing decisions by this Court finding exclusion of alibi testimony

*(Footnote Continued)* _____

> (1) If the defendant fails to file and serve the notice of alibi as required by this rule, the court may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

proper for failure to comply with the rule's notice requirements). Instead, the trial court elected, in the interests of justice, to permit the testimony, inform the jury of the lack of proper notice, and allow the jury to consider whether the testimony presented raised reasonable doubt of Appellant's guilt.

The learned Dissent argues that the trial court's failure to enter an order under Rule 567(b)(1) and, instead, instruct the jury on Appellant's noncompliance with that rule, does not cure any prejudice the Commonwealth may have suffered due to Appellant's untimely disclosure in clear contradiction of the purpose of Rule 567(B)(1). Concurring and Dissenting Memorandum at 5. Again, we must respectfully disagree. The failure of the court's instruction to cure any prejudice to the *Commonwealth* is not the basis for any relief to the defense based on its objection to the charge. The mention of the defense's noncompliance in the charge is in keeping with the purpose of Rule 567(B)(1), which is to insure "both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." **Commonwealth v. Lyons**, 833 A.2d 245, 257 (Pa. Super. 2003) (additional citations omitted). By waiting until the fourth day of trial to disclose the identity of an alibi witness, the defense deprived the Commonwealth of ample opportunity to investigate crucial facts. Although the trial court was authorized by the rule to exclude the evidence completely, it elected—in the interests of justice—to

allow the testimony while informing the jury of the defense's noncompliance with the rule.

The learned Dissent cites **Commonwealth v. Servich**, 602 A.2d 1338, 1343 (Pa. Super. 1992), for the proposition that "orders" authorized by Rule 567(B)(1) may include permitting the Commonwealth to explain to the jury, through cross-examination of the defendant, why it was unprepared to address an untimely alibi defense. Concurring and Dissenting Memorandum at 4 n. 1. We cannot see that the result of permitting the Commonwealth to elicit an explanation of "unpreparedness" resulting from noncompliance with the rule is any different from permitting the testimony and informing the jury that the defense failed to comply with the rule. In both instances, the jury learns of the defense's noncompliance but still hears the alibi testimony.

As **Servich** also illustrates, a Rule 567(B)(1) "order" does not have to be in the form of a court order but rather can be in the form of an action taken by the trial court in the interests of justice in the event of a defendant's failure to give timely notice of an alibi defense.[5] **See also Commonwealth v. Poindexter**, 646 A.2d 1211, 1219 (Pa. Super. 1994) (trial court may exclude alibi evidence or refuse an alibi instruction for failure to comply with alibi notice requirements); **Commonwealth v. Feflie**, 581

---

[5] **Servich** and the other cases cited herein addressed Rule 567's precursor, Pa.R.Crim.P. Rule 305.

A.2d 636, 643 (Pa. Super. 1990) (trial court did not abuse its discretion by allowing the prosecution to present two previously unidentified rebuttal witnesses to respond to evidence not timely disclosed). The trial court here advised the jury of the defense's failure to comply with Rule 567(B)(1) and instructed the jury to consider that fact, along with the alibi testimony itself. We conclude that its instruction was in keeping with the trial courts' "orders" in *Servich*, *Poindexter* and *Feflie*, and was certainly a less severe remedy than exclusion of the alibi testimony, a remedy available to the trial court.

The Dissent suggests that the instruction "required the jury to consider the untimely notice in determining Appellant's guilt or innocence." Concurring and Dissenting Memorandum at 5. We do not construe that statement as a fair reading of the court's charge as a whole. In fact, the charge directs otherwise. In the quoted portion of the charge set forth above, the trial court instructed that Appellant's "evidence that he was not present, either by [itself] or together with other evidence, may be sufficient to raise a reasonable doubt of his guilt. If you have a reasonable doubt of [Appellant's] guilt, you must find him not guilty." N.T., 1/15/15, at 17-18. The jury's determination in that regard was not linked in any way to Appellant's noncompliance with Rule 567(B)(1).

We find no abuse of discretion in the trial court's charge to the jury.

We find no merit in any of the issues raised by Appellant. Therefore, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Strassburger files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/10/2017