J-S10022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WINDEL HOLMES | : | |
| | : | |
| Appellant | : | No. 818 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 7, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0001793-2019

BEFORE:  PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.:                          **FILED MAY 1, 2023**

Windel Holmes appeals from the judgment of sentence, imposed in the Court of Common Pleas of Delaware County, after a jury convicted him of two counts each of criminal conspiracy[1] and aggravated assault (F-1 and F-2),[2] and one count each of possessing instruments of crime[3] and possession of a firearm without a license.[4]  The trial court also convicted Holmes of possession of a firearm prohibited.[5]  After our careful review, we affirm.

---

[1] 18 Pa.C.S.A. § 903.

[2] *Id.* at § 2702.

[3] *Id.* at § 907.

[4] *Id.* at § 6106.

[5] *Id.* at § 6105.

The Honorable Kevin F. Kelly[6] set forth the facts of this matter as follows:

Angelica Pena met [] Holmes in 2018, both having lived on Baltimore Pike in East Lansdowne, when they entered a "relationship" that continued to August 2018. N.T. [Trial,] 11/16/21, [at] 74-75. [In 2018,] Holmes lived on Melrose Street in East Lansdowne with his grandmother and his brother, Jermaine Jackson. [*Id.* at] 76. [Holmes] was known to carry a gun that he kept in his bed. [*Id.* at] 149.

Sometime in early August 2018, Ms. Pena knew of tension between [] Holmes and Kevan Jackson, who resided at 70 East Penn Boulevard in East Lansdowne, two (2) blocks from Melrose Street. Kevan Jackson is a brother of the victim, Kahleef Jackson (["Victim"]). [*Id.* at] 80[,] 83. Ms. Pena[,] through her relationship with [Holmes] and local residency[,] was aware these "rivals" (Kevan Jackson and [] Holmes) disagreed about "who runs the block, Melrose." [*Id.* at] 123.

Relatedly, Kevan Jackson and [Holmes] had exchanged adversarial social media posts. [*Id.* at] 81. These combative media postings led [] Holmes to desire a direct conversation with Kevan Jackson, while he relatedly observed, "Yeah he's talking crazy. He's talking crazy about our block." [*Id.* at] 112-13.

Early on August 18, 2018, [] Holmes saw his brother, Jermaine Jackson, and Angelica Pena at a store on the corner of Melrose Street and Baltimore Pike, and announced his intention to then "talk" to Kevan Jackson. [*Id.* at] 82, 83 and 114. Ms. Pena described [] Holmes' mood as confrontational. [*Id.* at] 114.

[Holmes] walked the two (2) to five (5) minutes from the store to the sidewalk of Kevan Jackson's home accompanied by Ms. Pena, and his sibling, Jermaine Jackson. [*Id.* at] 83-84.

[] Holmes walked alone onto the driveway of 70 East Penn Boulevard and talked for ten (10) to fifteen (15) seconds with

---

[6] The Honorable James P. Bradley was the trial judge in this matter. When Judge Bradley retired on December 31, 2021, the matter was administratively reassigned to the Honorable Linda A. Cartisano and, ultimately, to Judge Kelly, who authored a thorough and comprehensive Pa.R.A.P. 1925(a) opinion.

Kevan Jackson. [*Id.* at] 20[,] 25. Tensions rose, then a fight. [*Id.* at] 25 and [*Id.*,] 11/17/21, [at] 86. [] Holmes grappled with Kevan Jackson and [the Victim], while Jahlil Jackson, another brother of the victim, took on Jermaine Jackson. [*Id.*,] 11/16/21, [at] 117. Pugilism held the stage for sixty (60) to ninety (90) seconds[,] [resulting in] Jermaine Jackson [falling] to the ground. [*Id.* at] 91 and [*Id.*,] 11/17/21, [at] 27. As he righted himself, Jermaine Jackson, according to [the victim,] "tells his brother[, Holmes,] to shoot me, shoot me—or shoot him, shoot him, and he pulls out a gun to shoot me." [*Id.*,] 11/17/21, [at] 27. Ms. Pena, describing the same command, testified that Jermaine Jackson said to his brother, [Holmes], "pop them, pop them." [*Id.*,] 11/16/21, [at] 94. [] Holmes then took a sock from the waist of his pants, removed a silver firearm from the sock, and shot once at the victim [] from just fifteen (15) feet away. [*Id.* at] 118, 47-48 and [*Id.*,] 11/17/21, [at] 20. "Everybody scattered." [*Id.*,] 11/16/21, [at] 148.

[Holmes] ran toward Pembroke Street then disappeared from the view of Ms. Pena and Jermaine Jackson, who had trailed him. Ms. Pena and Jermaine Jackson continued to walk together on Pembroke[,] holding hands to evade suspicion[,] and visited Jermaine Jackson's friend's house on Melrose Street. [*Id.* at] 100, 122.

At some point later that day, [] Holmes engaged a car service for passage to his mother's house in North Philadelphia, where Ms. Pena joined him that evening. [*Id.* at] 122. On direct examination, Ms. Pena said they did not talk about the shooting until the next day when she asked [Holmes] about the "fallout" and he said everything will be fine. [*Id.* at] 101-02.

Detective [James] Cadden [of the East Lansdowne Police Department] recorded a statement from [the victim] in the hospital the same day as the shooting (August 18, 2018) and returned on August 21, 2018[,] with two (2) photo arrays from which [the victim] identified [] Holmes and Jermaine Jackson as having been involved in his shooting. [*Id.*,] 11/17/21, [at] 72-76.

On August 21, 2018, the detective's application for a search warrant was judicially approved for 16 Melrose Avenue, Apartment B, East Lansdowne, where [Holmes] and Jermaine Jackson were lessees; and where[,] with arrest warrants for the three (3),

Detective Cadden found [] Holmes, Jermaine Jackson and Angelica Pena on August 23, 2018. [**Id.** at] 76-77, 83-87.

Ms. Pena gave two (2) custodial statements, both recorded after her rights against self-incrimination were imparted, acknowledged, and waived, on August 23, 2018[—]one at 7:40 hours and the second at 14:28 hours, military time.

On February 17, 2021, Ms. Pena, then represented by counsel and at liberty, gave a third statement. [**Id.** at] 88-90.

Detective Cadden became privy to recordings of three (3) phone calls that [] Holmes was said to be party to while incarcerated and awaiting trial. Those calls seemingly occurred between November 4, 2021 and November 9, 2021. The first[,] identified as from a November 4, 2021, call to telephone number (215) 980-1764[,] contained a person uttering the phrase "three times and out." Detective Cadden, without objection, identified the declarant as [] Holmes and then interpreted the reference to mean that[,] if a witness fails to appear in criminal court three (3) times[,] the case will be thrown out. [**Id.** at] 99-103. The second tape was made from a phone call to (267) 281-0872 on November 5, 2021, with the detective again authenticating the voice of [Holmes]. [**Id.** at] 103. The third audio recording was offered as originating from a November 9, 2021, call to (267) 281-0872[,] in which Detective Cadden recognized [] Holmes voicing the name "Jermaine." Detective Cadden testified that [Holmes] was referring to his sibling, Jermaine Jackson. [**Id.** at] 105.

Trial Court Opinion, at 14-17 (footnotes omitted).

A trial was held on November 16 through 18, 2021, after which the jury and trial court convicted Holmes of the above-stated offenses. On January 7, 2022, Judge Bradley sentenced Holmes to 10 to 20 years' incarceration for aggravated assault graded as a felony of the first degree, and consecutive terms of 2½ to 5 years' incarceration for one count of criminal conspiracy and 15 to 30 months' incarceration for carrying a firearm without a license. The court also sentenced Holmes to five years' probation for possession of a

firearm prohibited. The remainder of Holmes' convictions merged for purposes of sentencing.

Holmes filed a motion for reconsideration of sentence, which Judge Bradley denied. Holmes filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Holmes raises the following claims for our review:

> 1. Whether the trial court erred in admitting evidence of [Holmes'] prison telephone calls, since the three recorded conversations are irrelevant, did not include admissions or demonstrate consciousness of guilt, and any probative value was outweighed by the danger of unfair prejudice[.]
>
> 2. Whether the court below erred and violated the discretionary aspects of sentencing when it imposed a statutory maximum penalty on aggravated assault with consecutive sentences for conspiracy and two firearms offenses, since the overall penalty is harsh and excessive under the circumstances, especially where the court never placed adequate or proper reasons on the record, did not provide sufficient contemporaneous written justification for its upward guideline departure, and failed to properly account for individualized factors[.]

Brief of Appellant, at 5.

Holmes first claims that the trial court abused its discretion in admitting into evidence three recorded prison telephone calls between Holmes and third parties. Holmes claims the recordings are irrelevant, as they did not include any admissions or demonstrate consciousness of guilt. Rather, Holmes argues, "[a]ny reasonable person facing criminal prosecution would experience similar curiosity and apprehension regarding the court processes—including questions about repeated preliminary hearing postponements and

- 5 -

how a co-defendant's potential plea deal might impact them." Brief of Appellant, at 15. Even assuming, *arguendo*, that the recordings were relevant, Holmes asserts their probative value was outweighed by the danger of unfair prejudice, as the conversations revealed that Holmes was incarcerated and the trial court failed to issue a cautionary instruction to "clarify that [] Holmes was confined only due to this case [] or direct the jury to disregard his incarcerated status." **Id.** at 17. In addition, Holmes argues that the recordings "included inadmissible details about his brother's potential plea agreement" and "the prosecution improperly implied that the co-defendant's acceptance of responsibility would be incriminating." **Id.** Finally, Holmes asserts that the trial court's error in admitting the recordings was not harmless, as there is "a reasonable possibility it could have contributed to the jury's decision to convict." **Id.** at 18.

In response, the Commonwealth asserts that Holmes waived any challenge to the relevancy of the recordings by failing to raise the issue in the trial court. The Commonwealth points out that, prior to trial, Holmes objected to the recordings on the basis that they were more prejudicial than probative. **See** Brief of Appellee, at 9, citing N.T. Trial, 11/16/21, at 8.[7] During trial,

_____

[7] Defense counsel raised the issue as follows:

> And the third issue, Your Honor, is I was noticed by Mr. Krouse last week that he intends to introduce portions of three separate telephone calls made by my client while incarcerated at the Delaware County Prison. I received

*(Footnote Continued Next Page)*

Holmes objected only to the accuracy of the phone call transcripts. *See* Brief of Appellee, at 8, citing N.T. Trial, 11/17/21, at 100. Thus, "to the extent that [Holmes] challenges the relevancy of the recordings for the first time, his claim is waived." Brief of Appellee, at 10, citing *Commonwealth v. Hernandez*, 230 A.3d 480, 489 n.7 (Pa. Super. 2020) (finding appellate challenge to relevancy waived where objection at trial limited to assertion that prejudicial effect of evidence outweighed probative value). In any event, the Commonwealth asserts that the recordings were relevant because Holmes' "apparent belief that his freedom depended on the victim not appearing to testify suggests consciousness of guilt," because "an innocent person would not believe they will only be released if their accuser fails to appear." Brief of Appellee, at 11. In addition, "[h]is determination to interfere with his co-conspirator's plea, and his apparent concern that his co-conspirator's plea would make him appear guilty, also suggests consciousness of guilt." *Id.* at 12.

With respect to Holmes' argument that the recordings were unfairly prejudicial because they revealed he was incarcerated, the Commonwealth asserts that "the jury had no reason to think that [Holmes] was incarcerated

---

yesterday afternoon a transcript of those three calls, and my argument would be, Your Honor, that those calls are more prejudicial than probative, and I'm going to ask that he not be allowed to introduce those—or portions of those three telephone calls.

N.T. Trial, 11/16/21, at 8.

for anything but this case." *Id.* Given the jury's awareness that Holmes had been arrested in 2018, and that the recordings were made less than two weeks before trial, the jury was likely to infer that Holmes was in jail awaiting the instant trial, rather than for "'unrelated malfeasance, of which no evidence was proffered.'" *Id.* at 13, quoting Trial Court Opinion, 10/5/22, at 41.

Finally, the Commonwealth contends that any prejudicial effect of the recordings was *de minimis* compared to the overwhelming evidence of Holmes' guilt, including the eyewitness testimony of both the victim and Holmes' girlfriend identifying Holmes as the shooter. Thus, any hypothetical error in the admission of the recordings was harmless.

We agree with the trial court and the Commonwealth that Holmes has waived his challenge to the recordings' relevance. In order to preserve a claim for appellate review, a defendant must make an objection in the trial court "at the appropriate stage of the proceedings." ***Commonwealth v. Russell***, 209 A.3d 419, 429 (Pa. Super. 2019). "If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal." ***Commonwealth v. McGriff***, 160 A.3d 863, 871 (Pa. Super. 2017). As noted above, prior to trial, Holmes objected to the admission of the recordings only on the basis that their potential for prejudice outweighed their probative value. Accordingly, his appellate challenge to relevancy is waived. ***See Hernandez***, ***supra***.

We likewise agree with the trial court and Commonwealth that the probative value of the recordings outweighed the risk of undue prejudice.

> In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. ***Commonwealth v. Selenski***, 18 A.3d 1229, 1232 (Pa. Super. 2011). Questions concerning the admissibility of evidence are within "the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion." ***Id.*** (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." ***Commonwealth v. Harris***, 884 A.2d 920, 924 (Pa. Super. 2005) (internal citations and quotation marks omitted)[.] Furthermore, "if in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." ***Commonwealth v. Weakley***, 972 A.2d 1182, 1188 (Pa. Super. 2009) (citation omitted)[.]

***Commonwealth v. Thompson***, 106 A.3d 742, 754 (Pa. Super. 2014).

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence more or less probable than it would be without the evidence and the fact is of consequence in determining the action. ***See*** Pa.R.E. 401. Generally, all relevant evidence is admissible. However, relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. ***See*** Pa.R.E. 403. For this purpose, "[p]rejudice does not mean detrimental to a party's case, but rather, an undue tendency to suggest a decision on an improper basis." ***Pittsburgh Const. Co. v. Griffith***, 834 A.2d 572, 585 (Pa. Super. 2003) (citation and quotation marks omitted).

As a general rule, the prosecution may not reference a defendant's confinement, particularly in circumstances where doing so could signify prior criminal conduct. ***See Commonwealth v. Clark***, 309 A.2d 589, 591 (Pa.

1973); *see also* Pa.R.E. 404 (evidence of prior bad acts generally inadmissible). In support of his claim that the recordings of jailhouse phone conversations impermissibly alerted the jury to his confinement, Holmes relies upon *Commonwealth v. Padilla*, 923 A.2d 1189 (Pa. Super. 2007). There, the trial court granted defendant's motion *in limine* to exclude references to his prior record. At trial, a police officer replied to an open-ended question about what he found when he arrived at the scene of the crime as follows:

> When I got there I found—I was met at the door by the mother[,] who was very upset, yelling and carrying on, practically mad at me, but she started to tell me how everybody was downstairs. She went and picked up this guy [(Padilla)]. He's a family friend. **Apparently[,] he just got out of jail**, and so she was doing him a favor.

*Id.* at 1192 (emphasis in original). The defendant moved for a mistrial, which the trial court initially agreed to, but subsequently denied. The trial court did, however, agree to provide the jury with a cautionary instruction.[8] On appeal, this Court granted Padilla a new trial, finding that:

> Based on our review of the trial transcript, we find the circumstances surrounding the court's ruling to be troubling and the instruction itself too vague to have cured the prejudice. The trial court had granted Appellant's motion *in limine* and, upon violation of its order, agreed to a mistrial. Pressed by the prosecutor, however, the trial court instead opted to give a cautionary instruction and await further argument. The record suggests that the jury may have heard the side bar conference during which the trial court reversed itself. Moreover, the trial court's instruction did not specifically direct the jury to disregard

___

[8] Here, there is nothing in the record indicating that Holmes requested a cautionary instruction from the trial court, and Holmes does not argue that he did.

- 10 -

[the officer's] remark, "Apparently he just got out of jail." Then, despite the instruction, the prosecutor resumed his examination of [the officer] by repeating the officer's testimony that "Mom was upset," thereby allowing the jury to hear again testimony the trial court had just instructed them to disregard.

*Id.* at 1196 (citations to record omitted).

The facts of **Padilla** are distinguishable from those of the case *sub judice* in that, there, the necessary implication of the officer's statement—made in direct violation of a pretrial order[9]—was that the defendant had committed prior offenses for which he was, until just prior to the date of the new offense, in prison. Here, there is nothing in the record that could have suggested to the jury that Holmes was incarcerated for any reason other than the charges in this matter. As the trial court astutely noted:

Detective Cadden testified that on August 23, 2018, he served a search warrant at . . . the home of [] Holmes and his brother, Jermaine Jackson, and that arrest warrants were [also] served. The jury had heard that the persons named in the arrest warrants were in the home. The record indicates that the jury knew the shooting occurred on August 18, 2018, and that they became privy to [] Holmes' detention on August 23, 2018, and probably connected the dots. The record reflects a similar temporal arrangement between the dates of the prison calls and of [Holmes'] trial. Because the prison phone calls were engaged in by [Holmes] between November 4, 2021 and November 9, 2021, and his trial unfolded from November 16, 2021, to November 18, 2021, the jury was likely to infer that [] Holmes was then jailed per the current case. Further, the investigating detective explicitly testified he had[,] prior to the above-captioned matter[,] no contacts with Defendant Holmes. Reason would have left the deliberation room, if the jury inferred that [] Holmes was in [jail]

_____

[9] In its analysis, the Court noted that the existence of a pre-trial *in limine* ruling distinguished the facts in **Padilla** from the standard "passing reference-no prejudice" cases. **See Padilla**, 923 A.2d at 1195.

between November 4, 2021, and November 9, 2021, for unrelated malfeasance, of which no evidence was proffered.

Trial Court Opinion, 10/5/22, at 41 (citations to record omitted). We agree with the trial court's analysis.

Finally, even if the court erred in admitted the recordings, the error was harmless.

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Page*, 965 A.2d 1212, 1221 (Pa. Super. 2009).

At trial, the Commonwealth presented the eyewitness testimony of the victim and Holmes' girlfriend, Pena, both of whom identified Holmes as the shooter. *See* N.T. Trial, 11/17/21, at 27-43 (victim describing events surrounding shooting and identifying Holmes as shooter); *id.*, 11/16/21, at 90-97 (Pena testifying Holmes pulled gun from waistband and fired after brother told him to "pop them"). Thus, any prejudicial effect the recordings may have had "was insignificant compared to the overwhelming evidence" of Holmes' guilt. *Page*, 965 A.2d at 1222.

Finally, Holmes raises a challenge to the discretionary aspects of his sentence. Such a claim does not entitle an appellant to review as a matter of right. *Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, before this Court can address such a discretionary challenge, an

appellant must invoke this Court's jurisdiction by: (1) filing a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) including in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) raising a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Swope*, 123 A.3d at 337.

Here, Holmes filed a post-sentence motion for reconsideration of his sentence, followed by a timely notice of appeal to this Court. He has also included in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Rule 2119(f). Accordingly, we must now determine whether Holmes has raised a substantial question that his sentence is not appropriate under the Sentencing Code.

Prior to making that determination, however, we must address the Commonwealth's assertion that Holmes has, on appeal, deviated from the objections he raised in his motion for reconsideration of sentence and, to the extent he has done so, waives those claims. In his motion for reconsideration of sentence, Holmes raised the following arguments:

> 2. During sentencing, Judge Bradley indicated that [] Holmes did not show remorse. On the contrary, he did show remorse during the interview as to the preparation of the pre[-]sentence investigation report. In addition, he did not testify at the time of trial.
>
> 3. [] Holmes feels that the sentence imposed is excessive and asks the court's reconsideration of same.

Motion to Reconsider Sentence, 1/18/22, at ¶¶ 2-3 (unnecessary capitalization omitted). At the hearing on Holmes' motion to reconsider, counsel reiterated the argument raised in the motion:

> MR. GALLOWAY: Your Honor, Mr. Holmes was sentenced to an aggregate term of incarceration of 165 to 370 months, plus five years['] consecutive probation. You did make a comment during the sentencing that occurred that Mr. Holmes did not show remorse and that is basically the crux or the basis for the filing of the motion. I would remind the Court that Mr. Holmes did not testify at the time of trial, and in addition, Your Honor, the pre-sentence investigation report did indicate that Mr. Holmes[,] when asked for his narrative or his statement or his comments[,] did indicate remorse. I believe Mr. Holmes would like to read a relatively brief statement to the Court if he may, Your Honor.

N.T. Motion for Reconsideration Hearing, 2/8/22, at 3-4.

In his Rule 2119(f) statement, Holmes raises the following claims: (1) the trial court failed to place adequate or proper reasons on the record for the sentence imposed; (2) the trial court failed to provide a sufficient contemporaneous written justification for its upward guideline deviation; (3) the trial court failed to confirm whether it had considered the PSI in imposing sentence; (4) the trial court imposed an excessive sentence; and (5) the trial court failed to properly account for individualized factors, instead focusing almost exclusively on the severity of the charges, and erroneously concluded Holmes lacked remorse. *See* Brief of Appellant, at 21-24 (Rule 2119(f) statement).

"[I]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Mann***, 820 A.2d 788, 794

(Pa. Super. 2003). *See also* Pa.R.A.P. 302. As such, an appellant's failure to raise a specific claim regarding the discretionary aspects of his sentence before the trial court waives that issue on appeal. *See Commonwealth v. Reeves*, 778 A.2d 691, 692–93 (Pa. Super. 2001) (appellant's failure to raise specific claim in post-sentence motion that trial court failed to state reasons for sentence on record deprived trial court of opportunity to consider claim and, thus, claim waived on appeal). Accordingly, the sole claims that Holmes has preserved on appeal are those specifically raised in his motion for reconsideration, i.e., that his sentence is excessive and that the trial court erroneously concluded he lacked remorse.

> A substantial question requires a demonstration that "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005). This Court's inquiry "must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* Whether a substantial question has been raised is determined on a case-by-case basis; the fact that a sentence is within the statutory limits does not mean a substantial question cannot be raised. *Commonwealth v. Titus*, 816 A.2d 251, 255 (Pa. Super. 2003). However, a bald assertion that a sentence is excessive does not by itself raise a substantial question justifying this Court's review of the merits of the underlying claim. *Id.*

*Commonwealth v. Fisher*, 47 A.3d 155, 159 (Pa. Super. 2012).

Similarly, "this Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa.

- 15 -

Super. 2013). Thus, Holmes' argument that the trial court failed to consider his remorse as a mitigating factor fails to raise a substantial question.[10]

As Holmes has failed to raise a substantial question, we may not reach the merits of this issue on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2023

---

[10] We note that, in asserting that the trial court "erroneously concluded that [he] lacked remorse" with regard to the instant offenses, Holmes appears to have misconstrued the court's statement at sentencing. The court did not state a belief that Holmes had no remorse in this case. Rather, the court stated it had considered, *inter alia*, Holmes' prior record, which the court found "indicate[d] that [Holmes] certainly had no remorse **from the first time around** on committing a serious crime[.]" N.T. Sentencing, 1/7/22, at 12 (emphasis added). Accordingly, this claim is belied by the record.